**SO ORDERED.**

**SIGNED this 11 day of February, 2008.**



_Dale L. Somers_
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

FOR ONLINE USE AND PRINT PUBLICATION

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

DONALD W. DAWES and
PHYLLIS C. DAWES,

               DEBTORS.

CASE NO. 06-11237
CHAPTER 12

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEBTORS' MOTION FOR SUMMARY JUDGMENT AND**
**DENYING UNITED STATES' CROSS MOTION FOR SUMMARY JUDGMENT**
**ON WHETHER 11 U.S.C. § 1222(a)(2)(A) APPLIES TO CLAIMS**
**ARISING FROM POSTPETITION SALES OF FARM ASSETS**

Following oral argument, the Court took under advisement the Debtors' Motion for

Partial Summary Judgment[1] and the United States' Cross Motion for Partial Summary Judgment.[2]

One of the issues raised in Debtors' motion is whether "11 U.S.C. § 1222(a)(2)(A) allows the

_____

[1] Doc. 142.

[2] Doc. 166.

Debtors to provide in their Chapter 12 plan that the IRS' post-petition capital gains tax claim incurred as a result of the IRS' forced sale of Debtors' real estate is an unsecured claim."  Chapter 12 Debtors, Donald W. Dawes and Phyllis C. Dawes (hereinafter collectively "Debtors"), appear by their counsel, Mark J. Lazzo.  Creditor, the United States of America, through the Internal Revenue Service (hereafter "IRS"), appears by Stephanie M. Page.  There are no other appearances.[3]  The Court has jurisdiction.[4]  For the reasons stated below, the Court grants the Debtors' motion for summary judgment, denies the IRS' cross motion for summary judgment, holds that § 1222(a)(2)(A) applies to postpetition sales, and enters judgment on this portion of the motions for partial summary judgment.

**BACKGROUND AND FINDINGS OF UNCONTROVERTED FACTS.**

On July 14, 2006, Debtors filed this case pro se under Chapter 7 of Title 11.  The Chapter 7 case was dismissed by order filed on August 2, 2007, for failure to file form B22 and schedules.  On August 4, 2006, counsel entered his appearance as counsel for Debtors.  A motion to reopen case was granted, and by order entered August 17, 2006, the case was converted to Chapter 12.  Edward J. Nazar was appointed Chapter 12 Trustee.  The IRS, which holds a

---

[3] The Chapter 12 Trustee, Edward J. Nazar, was present at oral argument, but has not filed a brief on any of the issues raised in the summary judgment motions.

[4] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984.  A motion for construction of a portion of the Code relevant to confirmation of a plan is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(A) and (L). There is no objection to venue or jurisdiction over the parties.

Case 06-11237    Doc# 243    Filed 02/11/08    Page 2 of 21

judgment against the Debtors for $1,541,604.08, plus interest from May 3, 2004 for 1982 through 1990 income taxes,[5] is the principal creditor.

On October 23, 2006, the IRS obtained an order of stay relief as to eight parcels of real property, titled in the name of Plainsman Trust, which was found to be Debtors' nominee in pre-petition litigation between the IRS and Debtors.[6] On November 13, 2006, Debtors filed a Chapter 12 plan.[7] It proposed to pay that portion of the IRS claim secured by the eight parcels by surrender of the property to the IRS. The proposed plan further provided that "pursuant to 11 U.S.C. §1222(a)(2)(A), all claims of the IRS or Kansas Department of Revenue that arise post-petition as a result of the sale, transfer, exchange, or other disposition of the [nine parcels] shall be treated as a general unsecured claim not entitled to priority under § 507."[8] The IRS objected to the portion of the plan regarding the claims of governmental units for taxes arising from the postpetition sale.[9] The eight parcels of real estate were sold, and the sale proceeds exceeded $900,000.[10] Debtors assert the sale will result in a significant capital gains tax, and the IRS does not question this assertion.

---

[5] *United States v. Dawes*, 344 F. Supp. 2d 715 (D. Kan. 2004) aff'd 161 Fed. Appx. 742 (10th Cir. 2005).

[6] *United States v. Dawes*, 344 F. Supp. 2d at 715. The parties agree that the eight parcels were owned by Debtor on the date of filing.

[7] Doc. 50.

[8] *Id.*

[9] Doc. 62.

[10] Doc. 142.

3

On August 9, 2007, Debtors filed a motion for partial summary judgment,[11] requesting, in part, this Court to rule as follows: "§ 1222(a)(2)(A) allows the Debtors to provide in their Chapter 12 plan that the IRS' post-petition capital gains tax claim incurred as a result of the IRS' forced sale of Debtors' real estate is an unsecured claim." On September 24, 2007, the IRS filed its Reply and Cross Motion for Partial Summary Judgment,[12] moving for summary judgment on the issue that § 1222(a)(2)(A) does not apply to capital gains from postpetition sales.

There are no material facts in controversy. The question before the Court is an issue of law which has been fully briefed. Oral arguments have been heard. The Court is now ready to rule and, for the reasons stated below, grants the Debtors' motion and denies the IRS' motion, finding that capital gains taxes arising from postpetition sales of assets by a Chapter 12 debtor are governed by § 1222(a)(2)(A).

## ANALYSIS AND CONCLUSIONS OF LAW.

Section 1222 addresses the requirements for confirmation of a Chapter 12 plan. Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), absent agreement otherwise, § 1222(a)(2) required full payment in deferred cash payments of all priority claims as defined by § 507. Subsection 1222(a)(2) provided:

> (a) The plan shall–
>
>                 * * *
>
> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim.

---

[11] Doc. 142.

[12] Doc. 166.

4

Effective for all cases filed after April 20, 2005, Congress amended § 1222(a)(2) by adding subsection (A), so the subsection now provides:

> (a)  The plan shall–
>
> * * *
>
> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507, unless–
>
> (A) the claim is a claim owed to a governmental unit that rises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation, in which case the claim shall be treated as an unsecured claim that is not entitled to priority under section 507, but the debt shall be treated in such manner only if the debtor receives a discharge;

Debtors contend the capital gains taxes arising from the postpetition sale of the farm real property come within the new provision and the plan need not provide for payment in full of this unsecured claim.  The IRS contends the new provision is inapplicable to capital gains taxes arising from postpetition dispositions of farm assets in a Chapter 12 case because the tax is the personal liability of the debtor, not an administrative expense of the estate entitled to priority under § 507.  Thus, the issue presented is whether the claim for capital gains taxes arising from the postpetition sale of real property is a priority claim under § 507, which pursuant to § 1222(a)(2)(A) shall be treated as an unsecured claim not entitled to priority.

Section 507 sets forth ten categories of claims that are entitled to priority status.  Because holders of priority claims have special rights, "priorities . . . are narrowly construed [and a] party must fit clearly within the requirements of the priority statute to be accorded priority status."[13] Of

_____

[13] 4 *Collier on Bankruptcy* ¶ 507.01 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2007).

5

the ten categories, there is only one, administrative claims under § 507(a)(2), which the parties

address as possibly applicable to postpetition capital gains taxes.

Second priority claims are defined by § 507(a)(2) as follows: "[A]dministrative expenses

allowed under section 503(b) of this title, and any fees and charges assessed against the estate

under chapter 123 of title 28." "[A]dministrative expenses are generally those that are incurred

by the estate after the entry of the order for relief."[14]  The relevant portion of § 503, allowance of

administrative expenses, in subsection (b)(1), provides:

> (b) After notice and a hearing, there shall be allowed
> administrative expenses, other than claims allowed under
> section 502(f) of this title, including–
>
> (1)(A) the actual, necessary costs and expenses of
> preserving the estate including–
>
> * * *
>
> (B) any tax–
>
> (i) incurred by the estate, whether secured or unsecured,
> including property taxes for which liability is in rem, in
> personam, or both, except a tax of a kind specified in
> section 507(a)(8) of this title; or
> * * *
>
> (D) notwithstanding the requirements of subsection (a), a
> governmental unit shall not be required to file a request for
> the payment of an expense described in subparagraph (B)
> or (C), as a condition of its being an allowed administrative
> expense;

Taxes are therefore accorded administrative expenses priority if they are (1) "incurred by the

estate" and (2) not "of a kind specified in section 507(a)(8)." "[T]he reference in section

---

[14] 4 *Collier on Bankruptcy* ¶ 503.01.

Case 06-11237    Doc# 243    Filed 02/11/08    Page 6 of 21

503(a)(1)(B)(i) [sic] to section 507(a)(8) means that, to the extent that a debtor's prepetition liability becomes a tax claim after the petition, it is not for that reason alone to be given administrative expense status."[15] The IRS agrees that the capital gains taxes at issue in this case are not priority taxes under § 507(a)(8), such that the second requirement is satisfied.[16] Thus, the issue as to administrative claim status is whether the taxes were "incurred by the estate" within the meaning of § 503(b)(1)(B)(i). The IRS contends the taxes were not "incurred by the estate" because in a Chapter 12 case the filing of the petition does not create a new taxable entity so the taxes incurred postpetition are the liability of the debtor, not the estate.

Debtors rely on *Knudsen*,[17] the first case addressing whether § 1222, as amended by BAPCPA, permits debtors to treat an IRS claim for postpetition capital gains taxes as an unsecured claim. The court in *Knudsen* answered yes. It found capital gains taxes arising from the postpetition sale of debtors' farm assets were administrative expenses under § 503(b)(1)(B)[18] and such taxes can be treated as unsecured and dischargeable pursuant to § 1222(a)(2)(A). The court noted that "[p]revious to BAPCPA, it has been the priority status of an IRS claim arising

_____

[15] 4 *Collier on Bankruptcy* ¶ 503.07[2].

[16] Doc. 166. Each of the three cases addressing whether capital gains taxes arising from the postpetition sale of assets in a Chapter 12 case have held that the taxes are not priority taxes under § 507(b)(1)(B). *In re Knudsen*, 356 B.R. 480, 490 (Bankr. N.D. Iowa 2006); *In re Hall*, 376 B.R.741, 744 (Bankr. D. Ariz. 2007); and *In re Schilke*, 379 B.R. 899, 901 (Bankr. D. Neb. 2007).

[17] *In re Knudsen*, 356 B.R. at 480.

[18] The *Knudsen* court held that debtors' tax debt, which included both prepetition and postpetition components, could be "divided into separate components in accordance with the bankruptcy laws determining the priority of payment of those claims." *Id*., 356 B.R. at 490, *quoting Missouri Dept. Of Rev. v. L.J. O'Neill Shoe Co. (In re L.J. O'Neill Shoe Co.)*, 64 F.3d 1146, 1152 (8th Cir. 1995). Section 1222(a)(2)(A) treatment based upon administrative claim status was litigated only for taxes arising from postpetition sales of farm assets.

7

from a debtor's sale of capital assets that often prevented chapter 12 debtors from reorganizing."[19] In amending § 1222, Congress removed this confirmation impediment. "By treating the portion of income tax resulting from the sale of capital assets as an unsecured claim, the farmer would no longer have to pay it in full to obtain confirmation."[20] *Knudsen* has been followed by *Schilke*,[21] which held that the Chapter 12 plan could treat the capital gains tax from the postpetition sale of assets as a general unsecured debt, even though acknowledging that debtors' Chapter 12 estate was not a separate taxable entity.[22] As to administrative expense characterization, the court stated:

> I do not believe that the language of § 503(b)(1)(B) regarding any tax "incurred by the estate" was intended to apply only to those situations where the estate itself is a separate taxable entity. In fact "incurred by the estate" has been interpreted to simply mean incurred post-petition.[23]

*Knudsen* was rejected by *Hall*,[24] on which the IRS relies. *Hall* held that federal taxes on capital gains arising from the postpetition sale of farm assets in a Chapter 12 case are not entitled to administrative claim status under § 503(b)(1)(B)(i). The court read the definition of administrative claim in conjunction with the Internal Revenue Code (IRC) and concluded that

---

[19] *In re Knudsen*, 356 B.R. at 488.

[20] *Id.*

[21] *In re Schilke*, 379 B.R. at 899.

[22] *Id.*, 379 B.R. at 902.

[23] *Id.*, citing *L.J. O'Neill Shoe Co.*, 64 F.3d at 1149.

[24] *In re Hall*, 376 B.R. at 741.

because there is no separate taxable entity created by the filing of a Chapter 12 case, the capital gains tax arising from postpetition disposition of assets could not be "incurred by the estate."[25]

The IRS urges this Court to follow the reasoning of *Hall*. According to the IRS, in a Chapter 12 case, capital gains taxes arising from postpetition dispositions of the estate property are not administrative expenses because the tax liability is not "incurred by the estate," since in a Chapter 12 case the estate is not a separate taxpayer. The IRS relies upon the IRC §§ 1398 and 1399 which define the person liable for taxes on the income of a bankruptcy estate. IRC § 1398 applies to cases under Chapter 7 or Chapter 11 of Title 11 " in which the debtor is an individual" and provides the tax on the taxable income of the estate is computed in the same manner as for an individual and "shall be paid by the trustee."[26] IRC § 1399 provides, "Except in any case to which section 1398 applies, no separate taxable entity shall result from the commencement of a case under Title 11 of the United States Code."[27] Accordingly, the Court agrees with the IRS' position that the bankruptcy trustee has liability for income taxes in individual Chapter 7 and 11 cases, but not in corporate or other entity Chapter 7 and 11 cases or in any case under Chapter 12 or 13.

But this conclusion does not answer the question whether capital gains taxes arising from the postpetition sale of assets in a Chapter 12 case constitute administrative expenses under § 503(b)(1)(B)(i). The Court finds that the phrase "incurred by the estate" in § 503(b)(1)(B)(i)

---

[25] *Id.*, 376 B.R. at 746.

[26] 26 U.S.C. § 1398.

[27] 26 U.S.C. § 1399.

defining administrative expense for certain taxes is ambiguous. For all chapters, including Chapter 12, the filing of a petition under Title 11 creates an estate comprised of all of the property of the debtor, as defined by § 541.[28] "Incurred by the estate" could have reference to the time liability for a tax accrues - did the liability arise before or after the creation of the estate under § 541. Or, "incurred by the estate" could have reference to the entity liable for the tax - is the bankruptcy estate created under § 541 liable for the tax? Accordingly, the Court will consider legislative history to determine Congressional intent.[29]

The § 503(b)(1)(B)(i) definition of administrative expense, which applies to all chapters of the Code, was enacted as part of the 1978 Bankruptcy Code. The Senate report accompanying the proposed legislation does not address the identity of the taxpayer as a relevant consideration. It states, when discussing § 503(b)(2):

> In general, administrative expenses include taxes which the trustee *incurs in administering the debtor's estate*, including taxes on capital gains from sales of property by the trustee and taxes on income earned by the estate *during the case*. Interest on tax liabilities and certain tax penalties incurred by the trustee are also included in this first priority.[30]

The Report of the Recommendations of the Senate Finance Committee, to which the tax-related provisions of the proposed Code had been referred, stated in part as follows concerning tax

---

[28] 11 U.S.C. §§ 541 and 1207.

[29] *Blum v. Stenson*, 465 U.S. 886, 896 (1984) (stating where "resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear") .

[30] S. Rep. No. 95-989, 95th Cong., 2d Sess. 66 (1978) (italics supplied), reprinted in D *Collier on Bankruptcy* App. Pt. 4-2008.

priorities: "Administrative expenses - Taxes *incurred during the administration of the estate* share the first priority given to administrative expenses generally."[31]  Hence, the legislative history of § 503(b)(2)(B) evidences that Congress intended "incurred by the estate" to have reference to when the tax liability was incurred, not to the entity having liability for the tax.

This conclusion is strengthened by the history of the enactment of tax provisions related to the 1978 Bankruptcy Code.  The phrase "incurred by the estate" in the definition of administrative expenses in § 503(b)(2)(B)(i) was adopted in 1978.  Proposals in the 1978 bankruptcy bill concerning federal taxation were not enacted.[32]  The bankruptcy related tax proposals were enacted as separate legislation, the Bankruptcy Tax Act of 1980.  The situation was described as follows:

> Prior to the enactment of the Bankruptcy Tax Act of 1980, there were no specific Internal Revenue Code provisions addressing the federal tax treatment of bankrupt individuals and their corresponding bankruptcy estates.  The only guidance was provided by a few rulings issued by the IRS and judicial decisions, which were often conflicting.  The legislative history underlying the codification of I.R.C. Section 1398 emphasized the obvious lack of guidance that created uncertainty for taxpayers and the courts.[33]

---

[31] S. Rep. No. 95-1106, 95th Cong., 2d Sess. 13 (1978) (as reported by the Senate Judiciary Committee and the Senate Finance Committee ) (italics supplied), reprinted in D *Collier on Bankruptcy* App. Pt. 4-2158.

[32] See *Id.*, 7 (stating, "Federal tax rules dealing with the subject matter of this section of title 11 [section 346] will be the subject of legislation expected early in the next Congress."); *see also Towers v. United States (In re Pacific-Atlantic Trading Co.)*, 64 F.3d 1292, 1298-1301 (9th Cir. 1995) (when determining that corporate Chapter 11 debtor's tax liability to be an administrative expense, the court examined in detail the legislative history of interaction between the Bankruptcy Code, particularly § 346, and the tax law).

[33] 15 *Collier on Bankruptcy* ¶ TX2.02[3].

11

IRC §§ 1398 and 1399, relied upon by the IRS in this case, were enacted as part of that 1980 tax legislation.[34]  That legislation amended the IRC and addressed matters of tax filing, reporting, and payment obligations, not the definition of administrative claim in the Bankruptcy Code.[35]

Hence, the foregoing legislative history regarding the 1978 Code and the 1980 Bankruptcy Tax Act leads the Court to conclude that the use of the phrase "incurred by the estate" in the definition of administrative expenses in § 503(b)(1)(B)(i) has reference to the time when tax liability is incurred and not to whether the estate is a separate taxable entity.

This is the construction given to the phrase by courts and commentators since 1978. Other than the one recent case construing § 1222 as amended by BAPCPA,[36] the IRS has not cited and the Court has been unable to locate any Chapter 7, 11, or 12 case where taxpayer status was considered in determining whether tax claims were entitled to administrative claim status.[37] Commentators and cases, consistent with the legislative history, construe the phrase "incurred by the estate" in § 503(b)(1)B)(i) to have reference to the time the "tax accrues and becomes a fixed

---

[34] Pub. L. 96-589 (1980), reprinted in E-1 *Collier on Bankruptcy* App. Pt. 5(a).

[35] *See* 15 *Collier on Bankruptcy* ¶ ¶TX3.01, TX 3.02 and TX 3.03.

[36] *In re Hall*, 376 B.R. at 741.

[37] There are surprisingly few reported cases addressing whether capital gains taxes arising from postpetition sales are administrative expenses.  The Court speculates that this is because the construction of § 503(b)(1)(B)(i) to include such taxes is so well accepted.  The Court's research has revealed the following cases where capital gains taxes from postpetition sales in Chapter 7 and Chapter 11 cases have been held to be administrative expenses.  *In re Goffena*, 175 B.R. 386, 391 (Bankr. D. Mont. 1994) (holding the tax liability incurred by the estate due to the Chapter 7 Trustee's sale of real property is an administrative expense pursuant to § 503(b)(1)(B)); *In re Swann, 149 B.R. 137, 144-45 (Bankr. D.S.D. 1993)* (holding capital gains taxes arising from Chapter 7 Trustee's § 363 sale of secured property is an administrative expense*); and In re Scott Cable Communications*, 227 B.R. 596, 600 (Bankr. D. Conn. 1998) (Chapter 11 Debtor conceded that capital gains tax that accrues during the administration of the case is an administrative expense under § 503(b)(1)(B)).

12

obligation."[38]  The distinction is whether the tax should be considered to have accrued to the postpetition estate as opposed to the debtor prepetition.  Commentators do not identify the IRC provisions on which the IRS relies as relevant to the determination of administrative claim status for taxes accruing postpetition.[39]

If administrative claim status were dependent upon the creation of a new taxpaying entity upon the filing of a petition, federal taxes incurred by Chapter 7 and Chapter 11 corporate debtors would be denied administrative claim status, as under the IRC sections cited by the IRS a corporation's filing of a petition under either Chapter 7 or Chapter 11 does not create a new taxpayer.  Yet, it appears to this Court that in the past the IRS, when seeking to benefit from administrative claim priority, has disregarded the IRC Code sections on which it now relies.  For example, in *United States v. Noland*,[40] the United States claimed administrative expense treatment for FUTA and FICA taxes, interest, and penalties that accrued after a corporate debtor filed for relief under Chapter 11 but before the case was converted to Chapter 7.  The Chapter 7 Trustee opposed the IRS as to the penalty and interest.  The bankruptcy court found the taxes to

---

[38] 4 *Collier on Bankruptcy* ¶ 503.07[1]; *see United Mine Workers of Amer. 1992 Benefit Plan v. Rushton (In re Sunnyside Coal Co.)*, 146 F.3d 1273 (10th Cir. 1998) (holding that in a voluntary corporate Chapter 11 case, liability under the Coal Act arising postpetition constituted taxes incurred by the estate).

[39] *See* 3 *Norton Bankruptcy Law & Practice 3rd* § 49:21 (Norton, auth & ed.-in- chief 2008) (noting legislative history in support of the broad interpretation of which taxes are entitled to administrative status and citing cases holding capital gains taxes arising from sale of property during administration of the estate are administrative expenses); and 4 *Collier on Bankruptcy* § 503.07[2][a] (stating it is clear that any taxes measured by the income earned postpetition will be administrative expenses of the debtor, but noting that some taxes on income earned prepetition may also be entitled to administrative expenses treatment depending upon when the tax year ends for a articular debtor under the various bankruptcy chapters).

[40] 517 U.S. 535 (1996).

Case 06-11237   Doc# 243   Filed 02/11/08   Page 13 of 21

be administrative claims but held them categorically subject to equitable subordination under § 510(c). The district court and Sixth Circuit affirmed. The United States Supreme Court held that the IRS' claims could not be categorically equitably subordinated in derogation of the Congressional scheme of administrative expense priority for penalties relating to priority taxes by § 503(b)(1)(B).

As to the administrative claim status of capital gains taxes, the general acceptance of the irrelevancy under the Code of whether or not a Chapter 7 or Chapter11 debtor is an individual is illustrated by cases where such treatment was afforded without opposition. For example, in a corporate Chapter 11 case in litigation with the IRS, the debtor conceded that the capital gains tax arising from the postpetition sale of debtor's assets was an administrative expense if it accrued during the administration of the estate.[41] In another corporate Chapter 11 case, the court stated, "it is important to note at the outset that administrative expenses should include taxes which the trustee, and, in Chapter 11 cases, the [corporate] Debtor-in-Possession, incurs in administering the estate, including taxes based upon capital gains from sales of property and taxes on income earned by the estate during the case post-petition."[42]

In the past, in a Chapter 12 case, the IRS has agreed that a claim arising from the debtor's failure to pay postpetition employment taxes as they became due was an administrative expense

---

[41] *In re Scott Cable Communications, Inc.*, 227 B.R. at 600, (sustaining IRS' objection to confirmation for the reason that the plan failed to provide for payment of the capital gains tax attributed to the sale of assets contemplated by the plan as an administrative expense and rejecting debtor's contention that such treatment was required when the sale occurred postconfirmation).

[42] *In re Hillsborough Holdings Corp.*, 156 B.R. 318 (Bankr. M.D. Fla. 1993). *See also In re Pacific-Atlantic Trading Co.*, 64 F.3d at 1291 (holding that tax liability of corporate Chapter 7 debtor for taxes not assessed prepetition but assessable postpetition was entitled to allowance as an administrative expense).

14

subject to § 1222(a)(2).[43]  It therefore appears to the Court that the IRS has now changed its

position because of the detrimental consequences if § 1222(a)(2), as amended by BAPCPA,

applies to the capital gains taxes arising from the sale of Debtors' farm property.  This view not

only is inconsistent with the IRS' prior position but is also short sighted.  If this Court were to

adopt the rationale urged by the IRS, the holding would impact not only Chapter 12 cases, but

also corporate Chapter 7 and 11 cases, and perhaps even tax claims of local and state authorities.

The Debtors' construction, is not only consistent with past understanding, but also

promotes the purpose of § 1222(a)(2)(A).  One respected commentator states the following:

> . . . The treatment now afforded certain priority claims is radically
> different than treatment afforded in Chapter 11 or Chapter 13.
> This treatment was included in the 2005 Amendments in order to
> allow farm debtors to liquidate unprofitable portions of their
> family farm enterprise so that they could lower debt and improve
> profitability without regard to the capital gains tax or depreciation
> recapture which normally colors all sale decisions for family
> farmers.  Thus, the family farmer is allowed to make sound
> business decisions unfettered by the potential negative tax
> implications of the decisions.[44]

If, as contended by the IRS, only capital gains taxes arising from prepetition sales are covered by

§ 1222 (a)(2)(A), the provision would not apply to all "farm debtors," but only to farmers who

had the foresight to liquidate assets before filing.  The limited legislative history which is

available contradicts this construction and strongly supports a construction urged by Debtors.[45]

---

[43] *In re Ryan*, 228 B.R. 746, 747 (Bankr. D. Or. 1999).

[44] 7 *Norton Bankruptcy Law & Practice 3rd* § 133:6, n. 2.

[45] *See In re Knudsen*, 356 B.R. at 492.

15

Senator Grassley, when introducing legislation in 1999 containing identical tax benefits for family farmers, stated:

> "Safety 2000" also helps farmers to reorganize by keeping the tax collectors at bay. Under current law, farmers often face a crushing tax liability if they need to sell livestock or land in order to reorganize their business affairs. According to Joe Peiffer, a bankruptcy lawyer from Hiawatha, Iowa, who represents many family farmers, high taxes have caused farmers to lose their farms. Under the bankruptcy code, the I.R.S. must be paid in full for any tax liabilities generated during a bankruptcy reorganization. If the farmer can't pay the I.R.S. in full, then he can't keep his farm. This isn't sound policy. Why should the I.R.S. be allowed to veto a farmer's reorganization plan? "Safety 2000" takes this power away from the I.R.S. by reducing the priority of taxes during proceedings. This will free up capital for investment in the farm, and help farmers stay in the business of farming.[46]

Construing § 1222(a)(2)(A) to apply to postpetition sales provides debtors and their counsel when formulating a plan the flexibility intended by Congress to make decisions driven by farming and business factors, rather than potential adverse tax consequences.

The entire purpose of Chapter 12 is to allow a farmer to reorganize, and the specific purpose of the amendment to § 1222 was to remove a major impediment to reorganization. The IRS' interpretation of 1222(a)(2)(A) would require a farmer to develop a reorganization plan before filing, when few farmers have the benefit of legal counsel. Further, if that plan included selling assets, the farmer would be required to actually sell them prior to filing a Chapter 12. This alone would deprive a farmer of the benefit of the breathing space afforded by the automatic stay, which provides a period to develop a future plan for farming free from worrying about foreclosure and other creditor pressures. If Congress was primarily concerned with

---

[46] 145 Cong. Rec. S750-02, (Jan. 20, 1999) (available at 1999 WL 20426).

relieving the farmer of capital gains taxes incurred before filing bankruptcy, it would have made the amendment applicable to both Chapter 7 and Chapter 12 cases. It did not do so because the major goal was to assist reorganization and continuation of the debtor's farming operation. The IRS interpretation flies directly in the face of Congress' intent to amend Chapter 12 so that a farmer may develop a plan that includes selling property and not have capital gains taxes stand in the way of plan confirmation and a successful reorganization.

The IRS contends this Court should not follow *Knudsen* because it improperly relied upon *O'Neill Shoe Co.*[47] It points out that in *O'Neill Shoe* administrative claim status of the capital gains from postpetition dispositions of assets was not in dispute, that amendment to § 507 by the BAPCPA abrogated the ruling of *O'Neill Shoe*, and that *O'Neill Shoe* was a Chapter 11 rather than a Chapter 12 case. None of these matters cause the Court to reject the holding of *Knudsen*. The fact that administrative claim status was not litigated supports this Court's view that the allowance of such claims as entitled to administrative priority is so well established, even for Chapter 11 corporate debtors, that it is seldom litigated. Further, as thoroughly examined above, this Court concludes that Chapter 12 postpetition capital gains taxes are administrative expenses based upon Congressional intent without reliance on either *Knudsen* or *O'Neill Shoe*. Second, the amendment to § 507 after the *O'Neill Shoe* decision had to do with eighth priority claims, a matter not in issue in this case. Third, the fact that *O'Neill Shoe* is a Chapter 11 corporate debtor case means that in that case, as in this case, the filing of the petition did not create a separate taxable estate. This supports Debtors' argument that the fact that the

---

[47] *In re L.J. O'Neill Shoe Co.*, 64 F.3d at 1146.

filing of a Chapter 12 case does not create a new taxpayer does not defeat administrative claim status for the taxes in issue.

The Court respectfully declines to follow *Hall*,[48] the § 1222(a)(2)(A) case which adopted the IRS' arguments. This Court questions the *Hall* court's reliance on the "maxim that the courts are to 'assume that Congress is aware of existing law when it passes legislation.'"[49] Although IRC §§ 1398 and 1399 were in place at the time of BAPCPA, this Court has been unable to find any Chapter 12, or even any Chapter 7 or Chapter 11 case, where those IRC provisions were held to be relevant to the construction of the definition of administrative claim in § 503(b)(2)B)(i). It is highly doubtful that Congress could have foreseen the impediment to the application of § 1222(a)(2)(A) relied upon by the IRS in this case.

The IRS also contends its position is supported by *Brown*,[50] a Chapter 13 case relied upon by *Hall*. In *Brown*, after confirmation of a Chapter 13 plan, the debtor sold rental property and sought to have the resulting income taxes treated as an administrative claim of the estate. The *Brown* court rejected administrative claim status because § 1305, rather than § 503(b)(1)(B)(i), controls postpetition tax claims in Chapter 13 cases, as well as because the Chapter 13 estate is not a separate taxable entity. This Court declines to follow *Brown,* which relied primarily upon § 1305. Section 1305 has been construed to eliminate a tax creditor from receiving

---

[48] *In re Hall*, 376 B.R. at 741.

[49] *Id.*, 376 B.R. at 746.

[50] *In re Brown*, 2006 WL 3370867 (Bankr. D. Mass. Nov. 20, 2006).

administrative claim status under § 503(b)(1)(B)(i) for taxes accruing postpetition.[51] It has also been held that § 1305 grants to the tax creditor the "option whether it wishes to participate in a pending Chapter 13 bankruptcy because only the holder of the postpetition claim may file a claim under § 1305(a)."[52] Although in some respects patterned after Chapter 13, Chapter 12 has no provision similar to § 1305. Rather, as to administrative expenses, § 503(b)(1)(D), enacted by BAPCPA, provides that "a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense."[53]

The Court holds that administrative claim status for federal income taxes arising from the postpetition sales of farm assets is not determined by whether the tax is payable by the case trustee under §§ 1398 and 1399 of the IRC. If this were the case, all postpetition income taxes of Chapter 7 and 11 debtors other than individuals would not constitute administrative expenses. The legislative history of § 503(b)(1)(B)(i) and case law applying the subsection make no distinctions in Chapter 7 and 11 cases based upon the character of the debtor as an individual or whether the trustee has liability for postpetition taxes. The fact that in a Chapter 12 case a new taxpayer is not created is not relevant to the allowance of postpetition taxes as administrative claims. This construction promotes the Congressional purpose, identified by the *Knudsen* court,

---

[51] *In re Wright*, 66 B.R. 125 (Bankr. D. Kan. 1984); *In re Gyulafia*, 65 B.R. 913 (Bankr. D. Kan. 1986) (rejecting IRS position that it had a choice between filing a claim under § 1305 and filing a claim for administrative expense under § 503).

[52] *In re Brensing*, 337 B.R. 376, 382 (Bankr. D. Kan. 2006).

[53] *See also* 3 *Norton Bankruptcy Law & Practice 3rd.* §49:16 (stating the proof of claim provisions of the Code do not apply to administrative expenses).

19

to remove the impediment to Chapter 12 plan confirmation imposed by the pre-BAPCPA requirement that capital gains taxes arising from the sale of farm assets be paid in full.

**CONCLUSION.**

For the foregoing reasons the Court rejects the objection of the IRS to the Debtors' Chapter 12 plan premised upon Debtors' construction of § 1222(a)(2)(A) and concludes that the capital gains taxes arising from the postpetition sale of Debtors' real property are not prohibited from administrative expense treatment because the filing of a Chapter 12 case does not create a new taxpaying entity. Having rejected the IRS' only objection to the Debtors' position that the capital gains taxes are not entitled to priority under § 507 as an administrative claim, the Court finds that the capital gains tax liability arising from the sale of Debtors' farm property is within the § 1222(a)(2)(A) exception to the requirement that all claims entitled to priority under § 507 be paid in full in deferred cash payments. Accordingly Debtors' plan may treat the claim as an unsecured claim not entitled to priority under § 507, limited by the condition that such treatment is allowed only if the Debtors receive a discharge. Debtors' motion for summary judgment on the construction of § 1222(a)(2)(A) is granted, and the IRS' cross motion for summary judgment on the same issue is denied.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58. Further, the Court determines pursuant to Federal Rule of

Civil Procedure Civil 54(b), which is referenced in Federal Rules of Civil Procedure 58, there is no just reason for delay in the entry of judgment on this issue, even though this memorandum opinion adjudicates fewer than all of the objections to confirmation of Debtors' Chapter 12 plan and fewer than all rights and liabilities addressed by the Debtors' motion for partial summary judgment and the IRS' cross motion for summary judgment.

**IT IS SO ORDERED.**

###