**SO ORDERED.**

**SIGNED this 14 day of March, 2008.**



_____
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

FOR ONLINE USE AND PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In Re:

DONALD W. DAWES and
PHYLLIS C. DAWES,

　　　　　　　DEBTORS.

CASE NO. 06-11237
CHAPTER 12

MEMORANDUM OPINION AND ORDER
DENYING DEBTORS' MOTION FOR SUMMARY JUDGMENT AND
DENYING IN PART AND GRANTING IN PART UNITED STATES' CROSS MOTION
FOR SUMMARY JUDGMENT ON WHETHER DEBTORS ARE FAMILY FARMERS

　　　Following oral argument, the Court took under advisement the Debtors' Motion for

Partial Summary Judgment[1] and the United States' Cross Motion for Partial Summary Judgment.[2]

One of the issues raised in Debtors' motion is whether "Debtors qualify as 'family farmers' as

---

[1] Doc. 142.

[2] Doc. 166.

that term is defined by 11 U.S.C. § 101(18)." Chapter 12 Debtors, Donald W. Dawes and Phyllis C. Dawes (hereinafter collectively "Debtors"), appear by their counsel, Mark J. Lazzo. Creditor, the United States of America, through the Internal Revenue Service (hereafter "IRS"), appears by Stephanie M. Page. There are no other appearances.[3] The Court has jurisdiction.[4]

**BACKGROUND FACTS.**

On July 14, 2006, Debtors filed this case pro se under Chapter 7 of Title 11. The Chapter 7 case was dismissed by order filed on August 2, 2006, for failure to file form B22 and schedules. On August 4, 2006, counsel entered his appearance as counsel for Debtors. A motion to reopen case was granted, and by order entered August 17, 2006, the case was converted to Chapter 12. Edward J. Nazar was appointed Chapter 12 Trustee. The IRS, which holds a judgment against the Debtors for $1,541,604.08, plus interest from May 3, 2004 for 1982 through 1990 income taxes,[5] is the principal creditor.

On June 29, 2007, the IRS filed its Motion for Dismissal of the Debtors' Chapter 12 case.[6] The IRS contended that Debtors filed in bad faith and are not family farmers entitled to relief under Chapter 12 because they failed to meet the income test portion of the definition of

---

[3] The Chapter 12 Trustee, Edward J. Nazar, was present at oral argument, but has not filed a brief on any of the issues raised in the summary judgment motions.

[4] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A motion for construction of a portion of the Code relevant to a motion to dismiss is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

[5] *United States v. Dawes*, 344 F. Supp. 2d 715 (D. Kan. 2004) aff'd 161 Fed. Appx. 742 (10th Cir. 2005).

[6] Doc. 116.

2

family farmer in 11 U.S.C. § 101(18). The Trustee filed a motion to dismiss on July 11, 2007,[7] also contending that the Debtors are not family farmers. As examined below, the Trustee's motion was resolved by a settlement of a portion of an adversary proceeding, and the motion was withdrawn.[8] The IRS continues to pursue dismissal.

Debtors moved for summary judgment contending that they qualify as "family farmers" as that term is defined in § 101(18).[9] They assert that over 50% of their gross income was received from their farming operations, relying upon two alternative theories: (1) That the Schedule E rental income reported on their tax returns is farm income; and (2) that their gross income should include the farm income of Remnant Trust. The IRS opposed the Debtors' motion and filed a cross motion for summary judgment on the same issue.[10] Having considered the parties' briefs and head oral argument, the Court is now ready to rule. For the reasons stated below, the Court denies the Debtors' motion on both theories, denies the IRS's motion as to the Schedule E rental income, and grants the IRS's motion as to the Remnant Trust income. The Court finds there are material facts in controversy as to whether the income reported by Debtors on Schedule E as rental income should be considered farm income for purposes of the definition of family farmer.

---

[7] Doc. 126.

[8] Doc. 186.

[9] Doc. 142.

[10] Doc. 166.

**FINDINGS OF UNCONTROVERTED AND CONTROVERTED FACTS.**

The uncontroverted facts relevant to this issue are few. They are as follows. Debtors have been involved in farming in the Goodland, Kansas area continuously since 1962. Two trusts,[11] Remnant Company Unincorporated ("Remnant") and Evergreen Investment Company ("Evergreen"), were a part of Debtors' prepetition farming enterprise. Since 1986 the trusts have had their own tax ID numbers,[12] their own bank accounts, and their names of record on property titles. Debtors assert that the equipment used to run the Remnant farm operation is leased by Remnant from Evergreen and at least a portion of the real property farmed by Remnant is rented from Debtors. Debtors tax returns for years 2005, 2004, and 2003[13] do not include a Schedule F, on which farm income is to be reported. In the returns, Donald Dawes states his occupation is "referee," and Phyllis Dawes states her occupation is "housewife." Debtors' tax returns show income from two sources, business income from refereeing on Schedule C (used for reporting profit and loss from a business) and rental income on Schedule E (used for reporting supplemental income and loss) as follows:

| Year | Schedule C | Schedule E |
|---|---|---|
| 2005 | $1,150 (gross receipts) | $8,438 (rents received) |
| 2004 | $973 (gross receipts) | $11,010 (rents received) |

---

[11] Debtor Donald Dawes states by affidavit that the beneficial interests in Remnant and Evergreen are owned by Debtors' adult children and that Debtor alone runs the farming operation for Remnant. Doc. 142, Exh. A.

[12] The IRS responds that it has no records of Remnant tax returns. Debtors respond by providing copies of Remnant tax returns for years 2001 through 2006, all of which are undated but bear an IRS received stamp of August 9, 2007, after this case was filed.

[13] Doc. 142, Exh. M.

2003            $2,300 (gross receipts)        $5,686 (rents received)

The rental property is not identified on Schedule E, except to state it is Kansas real property.

The facts concerning the source of the income reported on Schedule E as rental income are controverted. Debtors assert by affidavit in support of their summary judgment motion that it was from rental of their farm property to Remnant and the rent was determined by the profitability of Remnant's farming business, which Debtors operated.[14] The IRS responds that Debtors have consistently asserted that they own no real property,[15] have not provided a lease, and have not provided evidence as to the calculation of rent. The IRS also cites deposition testimony which fails to corroborate the existence of a lease between Debtors and Remnant.[16] For example, Kenneth Palmgren, the Trustee of Remnant, testified that he is not aware of any rent being paid the Debtors.[17] At oral argument on the summary judgment motions, counsel for the Debtors argued that the rental income reported on Schedule E was in fact payment for services rendered to Remnant, not rental income. He stated that at the time of filing, Remnant farmed land owned by Debtors; that Remnant contracted with the owners to do the farming; that Remnant paid the Dawes for their work based upon the farming profit; that Dawes were the only

---

[14] Doc. 142, Exh. A.

[15] The real property listed on the Debtors' bankruptcy schedules is that which was titled in the name of Plainsman Trust, which the Federal District Court in *United States v. Dawes*, 344 F. Supp. 2d 715 (D. Kan. 2004) held to be the nominee of Debtors. Debtors appealed, and the Tenth Circuit affirmed by unpublished opinion filed on December 5, 2005. *United States v. Dawes*, 161 Fed. Appx. 742 (10th Cir. 2005).

[16] Doc. 116, Exh 2, 4, 5, & 7.

[17] Doc. 116, Exh. 7.

5

employees of Remnant; and that the "problem" arose when Debtors' tax preparer reported the income as rental income on Schedule E, rather than as farm income on Schedule F.

On October 18, 2007, the Court approved, over the objection of the IRS,[18] a compromise and settlement of claims asserted by the Debtors against the Chapter 12 Trustee and by the Chapter 12 Trustee against the Debtors, Remnant, and Evergreen in Adversary No. 07-5205. The settlement agreement[19] provides that Remnant and Evergreen "shall effect a post-petition transfer to the Dawes of all of the current assets of Remnant and Evergreen" and the Debtors agreed "to assume personal responsibility for payment of any income tax obligations owed by Remnant and Evergreen under" the returns to be prepared for all years of operation for which returns had not been previously filed. As to the Chapter 12 Trustee's motion to dismiss the Chapter 12 case based upon the contention that Debtors are not family farmers, the settlement agreement provides:

> As a result of Debtors' agreement to assume personal responsibility for payment of any income tax obligations owed per the missing returns of Remnant, the Trustee considers the income of Remnant to be attributed to the Debtors and, therefore, the Debtors qualify as "family farmers" as that term is defined by 11 U.S.C. § 101(18).[20]

At oral argument, counsel for Debtors stated that as a result of the settlement all farm operations are being conducted directly by the Dawes, without Remnant as an intermediary. There are no

---

[18] The IRS has contended that Remnant is a nominee of the Debtors, such that all property and income of Remnant is in reality property and income of the Debtors. Debtors have in the past and continue in this bankruptcy to oppose this position. See count II in adversary case no. 7-5205 in which Debtors' seek to avoid the IRS alleged liens in property of Remnant and Evergreen on the basis that the IRS did not comply with the procedure for perfection of a lien in property held in trust.

[19] Doc. 151. The agreement was filed in the main case, as well as Adversary No. 07-5205.

[20] *Id*.

6

longer any Remnant bank accounts; all costs and profits of farming operations are directly attributable to the Debtor in Possession.

**ANALYSIS AND CONCLUSIONS OF LAW.**

**A. Summary Judgment Standards.**

A motion to dismiss is a contested matter.[21] Pursuant to Bankruptcy Rule 9014,[22] Federal Rule 56,[23] is applicable to contested matters. Rule 56 provides that the judgment sought by a party moving for summary judgment should be "rendered if . . . there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact is a factual dispute that may affect the outcome of the case and one that a reasonable trier of fact could find in favor of either party.[24]

**B. The Definition of Family Farmer.**

Only a family farmer or a family fisherman may be a debtor under Chapter 12.[25] The definition of family farmer has two criteria: (1) That not less than 50% of their debts arise out of a farming operation (the "debt criteria") and (2) that more than 50% of Debtors' income in the preceding tax year (2005 in this case) or in each of the second and third taxable years (2003 and 2004 in this case) must be farming income (the "income criteria").[26] Debtors have the burden of

---

[21] Fed. R. Bankr. P. 1017(f).

[22] Fed. R. Bankr. P. 9014.

[23] Fed. R. Civ. P. 56.

[24] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[25] 11 U.S.C. § 109(f). In addition, the family farmer or family fisherman must have regular income.

[26] 11 U.S.C. § 101(18)(A).

7

proof in demonstrating they are eligible for relief under Chapter 12.[27] The farm income test is to be applied as of the filing of the case.[28] The IRS agrees the Debtors satisfy the debt criteria; however, the IRS contends the Debtors do not satisfy the income criteria. Debtors, of course, argue that they satisfy the income criteria. They present two alternative arguments why for purposes of the definition of family farmer their farm income exceeded 50% of their total income: (1) That the rental income reported on Schedule E of their 2005, 2004 and 2003 tax returns constitutes farm income; and (2) that Remnant's income should be considered income from Debtors' farming operation.

Application of the income criteria has two elements: Determination of total gross income; and identifying what percentage of that gross income was derived from the debtor's farming operation. Bankruptcy courts have employed two tests when selecting a definition of gross income for the purpose of determining whether the 50% test is satisfied.[29] Under the first test, adopted by the Seventh Circuit in *Wagner*, and labeled the tax code test,[30] gross income for purposes of the definition of family farmer "has the same meaning as in the Internal Revenue Code."[31] Courts following *Wagner* "use the definition of gross income found in the Tax Code at 26 U.S.C. § 62(a) and then determine what percentage of that gross income is derived from

---

[27] *Cottonport Bank v. Dichiara*, 193 B.R. 798, 801 (Bankr. W.D. La. 1996) (citing *In re Van Air Flying Service, Inc.*, 146 B.R. 816, 818 (Bankr. E.D. Ark. 1992)).

[28] 2 *Collier on Bankruptcy* ¶ 101.18[6](Alan N. Resnick & Henry J.Sommer eds.-in-chief, 15th ed. rev. 2007), citing *In re Grey*, 145 B.R. 86 (Bankr. D. Kan. 1992).

[29] *In re Sharp*, 361 B.R. 559, 564 (10th Cir. BAP 2007).

[30] *Id.*

[31] *In re Wagner*, 808 F.2d 542, 547 (7th Cir. 1986).

8

farming operations."[32] Bankruptcy Judge Pusateri, a former member of this Court, in *Nelson*,[33] where the issue was whether debtors could include as farm income a settlement received in 1985 for 1982 crop damage which was not included in their 1985 tax return, followed *Wagner* and held that, given the definition of family farmer, he had "neither the power nor the inclination to delve beyond the face of debtors' income tax returns."[34] He therefore found it irrelevant whether the Tax Code would consider the settlement as income for purposes of the 1985 return and conversely noted that "had debtors declared the settlement as Income in 1985, properly or not, [the court] would have been bound to consider it, even at the risk of reaching an absurd result."[35] In *Grey*,[36] decided by Judge Flannagan, also a former member of this Court, the debtor argued that potential income, not reported in his tax returns, attributable to 1991 from the possible future settlement of a pending adversary claim to reinstate CRP payments should be considered income for purposes of the family farmer definition. Judge Flannagan followed *Nelson* and held debtor ineligible under Chapter 12 because "when he filed his petition in 1992, his 1991 income tax return reflected that he had received no farm income in that tax year."[37] A primary rationale for this reliance on the Tax Code is that "[d]ebtors and creditors ought to be able to know from the start whether the debtor is exempt from bankruptcy [because he is a family farmer]; they would

---

[32] *In re Sharp*, 316 B.R. at 564, *citing In re Wagner*, 808 F.2d at 547.

[33] *In re Nelson*, 73 B.R. 363 (Bankr. D. Kan. 1987).

[34] *Id.*, 73 B.R. at 365.

[35] *Id.*, 73 B.R. at 365 n. 3.

[36] *In re Grey*, 145 B.R. at 86.

[37] *Id.*, 145 B.R. at 88.

9

not know till much later if we embarked on the protracted undertaking of constructing, in common law manner, case by case, a new jurisprudence of gross income."[38]

Some courts, although recognizing the relevancy of the tax code definition of gross income, do not rely exclusively upon it and examine the totality of the circumstances surrounding the debtor's income in order to achieve an equitable result. Courts employing this test reason that the definition of gross income in the tax code is too rigid for use in bankruptcy cases[39] and circumstances must be examined to determine whether income was farm related. For example, In *Way*,[40] the court agreed with the goal of the *Wagner* approach that the threshold determination of eligibility should not be subject to uncertainty, but held there should be a narrow exception to promote Congressional intent. Accordingly, it held that agricultural subsidy payments, which the debtor elected to exclude from gross income for tax purposes, should nevertheless be considered farm income for purposes of Chapter 12 eligibility. In *Rott*,[41] after extensive deliberation, the court "was unable to formulate a mechanical test for determining farm income and concluded "[w]hether income is farm or non-farm income for purposes of determining eligibility for Chapter 12 relief is no more capable of a determination as a matter of law, than is adequate protection."[42] It held forgiveness of debt income excluded from consideration because debtors received no cash from the transaction, even though it was considered gross income for income tax purposes.[43]

---

[38] *In re Wagner,* 808 F.2d at 547.

[39] *E.g, In re Rott,* 73 B.R. 366 (Bankr. D.N.D. 1987).

[40] *In re Way*, 120 B.R. 81, 82-83 (Bankr. S.D. Tex. 1990).

[41] *In re Rott*, 73 B.R. at 366.

[42] *Id.*, 73 B.R. at 373.

[43] *Id.*, 73 B.R. at 372.

10

*Bircher*[44] held that net capital gains from the sale of farm real property, reported on Schedule D, not Schedule F, was farm income for purposes of Chapter 12 eligibility.

The 10th Circuit has not spoken in a published opinion about which test should be employed.[45] However, in an unpublished decision, the BAP, although noting sympathy with the flexible approach of *Rott*, followed *Wagner* and used the Tax Code definition of gross income for determination of eligibility as a family farmer, thereby excluding proceeds from a loan from gross income.[46] As discussed above, the *Nelson* and *Grey* Kansas Bankruptcy Court decisions have also applied a strict Tax Code definition of gross income.

Nevertheless, this Court finds such a construction too restrictive and finds that totality of the circumstances approach better suited to the task of applying the Code definition of family farmer. It agrees that the Code's use of the term "gross income" and reference to income in specific "taxable" years when formulating the income test stated in § 101(18) directs bankruptcy judges to consider the tax code definition of gross income and the debtor's tax returns as starting points. But, in the opinion of the Court, these references do not preclude consideration of matters not revealed on the relevant tax returns or deviation from tax code definitions and classifications. The Court recognizes that circumstances may be presented where gross income and gross farm income for bankruptcy purposes are not identical to these amounts for income for tax purposes.

---

[44] *In re Bircher*, 241 B.R. 11, 15 (Bankr. S.D. Iowa 1999).

[45] *See In re Sharp*, 361 B.R. at 564 (stating "we need not decide that issue today" because under the facts of the case, the farmer would satisfy both tests).

[46] *First Security Bank, N.A. v. Francks (In re Francks)*, 251 B.R. 441, 1999 WL 565893 *4 (10th Cir. BAP 1999). Having held that the income should not be considered, the BAP did not address the related question of the relevancy of the debtor's tax returns in determining whether the reported income is from farming operations.

11

Such flexibility is required to fulfill the primary purpose of Chapter 12 to help family farmers to continue in farming[47] and not to restrict Chapter 12 eligibility based upon income tax considerations enacted to achieve an entirely different purpose.

**C. May Debtors satisfy the income test based upon their Schedule E income being classified as farm income?**

In this case, the primary positions of the IRS, when contending Debtors are not family farmers, and Debtors, when contending that the 50% income test is satisfied, pose the question whether the rental income shown on Schedule E of Debtors' tax returns was farm income.[48] The IRS relies on *Nelson* and *Grey* when asserting this Court should limit its consideration to income reported in Debtors' tax returns and not look beyond the face of the returns as to the source of the income. For the IRS, this leads to the conclusion that Debtors do not qualify for Chapter 12 because the face of their returns do not evidence any farm income. There is no Schedule F, and nothing on the face of the returns to identify the Schedule E income as related to farming.

For Debtors, reliance on the income as stated in the returns leads to the opposite result. Debtors argue that their tax returns for 2003, 2004, and 2005 show that more than 50% of their gross income came from their farming activities, because the reported Schedule E income was paid by Remnant to Debtors for their contribution to the farming enterprise. They urge the Court to look to the facts and circumstances of the source of the income. They construe *Nelson* and *Grey* as not prohibiting this analysis but as standing only for the proposition that those decisions

---

[47] *In re Tart*, 73 B.R. 78, 81 (Bankr. E.D.N.C. 1987); *See In re Sharp*, 361 B.R. at 564 (holding definition of "farming operation" in § 101(21) is to be liberally construed to further Congressional purpose of helping family farmers to continue farming).

[48] There is no dispute that the income test is satisfied if the Schedule E rental income is found to be income from Debtors' farming operation.

"justifiably refused to allow the debtor to benefit from his failure to report income, and would not look beyond the income reported on the prior year's return in determining eligibility."[49]

Thus, the primary arguments of both Debtors and the IRS rest upon the premise that Debtors' total gross income was as reported in their tax returns. Therefore, given the parties' positions, to resolve the motions for summary judgment, the Court must consider only the second aspect of the test - whether more than 50% of the reported income was from Debtors' farming operation. For the reasons stated below, the Court denies summary judgment to both parties on this question.

As to the IRS's position, for the reasons set forth above, the Court declines to adopt that IRS's argument that the percentage of income attributable to farming must be determined exclusively from the face of the tax returns. The Court respectfully declines to follow Judge Pusateri's analysis in *Nelson* in this regard. The definition of family farmer in § 101(18) refers to gross income and taxable years, leading this Court to find the gross income from farming operations reported on the tax returns is a starting point. However, the definition of family farmer does not expressly require that the percentage of gross income attributable to a debtor's farming operation be determined from the information included in the applicable tax return.[50] Although the tax code defines gross income, it does not separately define gross income from

---

[49] Doc. 142, pg. 17.

[50] Likewise, this Court is not convinced that the total gross income must be determined from the face of the return. Some farm income, such as government agricultural payments, are excluded from gross income under the tax code, but nevertheless have been held to constitute farm income for purposes of the 50% test. *In re Way*, 120 B.R. at 81.

13

farming operations.[51]  To adopt the rule urged by the IRS would make tax preparer decisions regarding the tax form on which income is reported serve an unexpected yet very important function for which they were not intended and make the definition of family farmer too rigid.

In general, tax returns do not provide the information necessary to determine whether reported income is farm related.  Although income reported on Schedule F provides a starting point, situations may arise where there is reason to depart from this analysis to reach an equitable result.  One commentator states the following summary based upon many cases:

> In analyzing whether income can be considered farm-related, there is no statute such as the Internal Revenue Code to look to for guidance and a decision must be made on a case-by-case basis.  Proceeds received from government farm programs have typically been considered farm income. Income received from joint venture or sharecropping arrangements has also been considered farm income.  Proceeds from the sale of real property have been held to be non-farm income when the debtor had not farmed the land that was sold.  Wages are not generally considered farm income, although an exception might be made for wages received by a person from a wholly-owned corporation.  Income received from sale of farm equipment has generally been held to be farm income.
>
> There is a split of authority, however, with regard to income from rental of farmland.[52]

.
This Court agrees that the 50% gross income test decision must be made on a case by case basis, and there is no simple rule of law that will apply in all circumstances.  The face of the tax returns, although helpful, will not be determinative, unless the relevant returns clearly disclose sufficient information to calculate the percentage of gross income from farming operations and there is no showing why the returns should not be taken at face value.  Generally, when family farmer status

---

[51] Schedule F instructions provide guidance in identifying farm income, but the rules are not black and white in all circumstances.

[52] 2 *Collier on Bankruptcy* ¶ 109.18[6].

14

is in issue, the portion of gross income attributable to farming operations will be a question of fact.

In this case, Debtors have made a showing of why the returns should not be conclusive and have created a question of fact relating to the 50% test. All parties agree that Debtors have been involved in farming since 1963. Debtors assert by affidavit that the income reported on Schedule E was from farming operations. For this reason, the Court denies the IRS's cross motion for summary judgment, to the extent it is based upon the position that eligibility for Chapter 12 is determined from the face of the relevant tax returns and Debtors' tax returns fail to evidence that over 50% of their gross income in the relevant years was from their farming operations. In this case, the tax returns are not controlling.

To determine whether Debtors' reported gross income for the relevant years was more than 50% from farming operations, the Court will consider evidence other than the returns. The facts and circumstances surrounding Debtors' receipt of the income reported as rental income on Schedule E will need to be examined to determine if it arose from Debtors' farming operation within the meaning of § 101(18).

Using this standard, the Court also rejects Debtors' contention that they are entitled to summary judgment because more than 50% of Debtors' gross income was from farming operations. Debtor Donald Dawes states by affidavit that the Schedule E income is from lease of Debtor-owned farm property to Remnant and the amount of rent is determined based upon the success of the farming operation. The IRS points out that before filing for bankruptcy Debtors consistently represented that they owned no real property. Income from rental of farm property to Remnant is further controverted by references to deposition testimony, including that of the

15

trustee of the Remnant Trust, who failed to corroborate the existence of leases and payment of rent. At oral argument, counsel for Debtors stated the Schedule E income was from Remnant and was the value of services provided by Debtors, not rent. A question of material facts exists which prevents the Court from ruling as a matter of law whether Debtors meet the 50% gross income test. Neither the IRS not the Debtors can be granted summary judgment on this contention.

For the foregoing reasons, the Court denies the motions for summary judgment of both Debtors and the IRS on the question of whether 50% or more of Debtors' reported gross income for tax year 2005 or for both tax years 2004 and 2003 was from their farming operations.

**D. May the income of Remnant be attributed to the Debtors?**

In addition to their primary argument that more than 50% of the gross income shown on the relevant tax returns was from Debtors' farming operation, Debtors assert, as an alternative position, that income of Remnant should also be considered as Debtors' income for purposes of the income test. The basis for this position is Debtors' postpetition acknowledgment as reflected in their agreement with the Chapter 12 Trustee, that Remnant should not be considered as an entity separate from the Debtors. Under this agreement, Remnant and Evergreen will effect postpetition transfers of all of their assets to the Debtors, and Debtors agreed to be personally liable for Evergreen's and Remnant's taxes, as established by returns to be filed after the agreement. Future farming operations will be conducted by Debtors directly, not through Remnant.

Debtors' position that Remnant's income should be attributed to them clearly is not tenable. The agreement was not that Remnant was the nominee of Debtors or that all income of Remnant for tax years 2005, 2004, and 2003 should be considered Debtors' income. In other

16

words, there was not an agreement that at any time prior to the date of the filing of Debtors' bankruptcy Remnant was other than a taxpayer separate from Debtors. As to past tax liability, the only agreement was that Debtor would pay Remnant's taxes.

A debtor's eligibility for Chapter 12 is determined by debtor's gross income for the taxable year preceding the date of filing or each of the second and third taxable years preceding the taxable year preceding the date of filing.[53] Family farmer status as defined by § 101(18) is based upon the debtor's gross income, not the income of a third party whose taxes are an assumed liability of the debtor. In tax years 2005, 2004, and 2003 Remnant had its own tax ID number, and its income was reported on its own tax returns filed by Remnant's Trustee.[54] Prepetition the income of Remnant, in excess of that paid to Debtors, was not included on Debtors' tax returns and may not be attributed to Debtors for purposes of family farmer status.

Chapter 12 eligibility generally is determined as of the date of filing, without consideration of postpetition events.[55] The agreement that in the future Debtors will directly conduct the farming operations and report as their income all farming operations income is not relevant to Debtors' status as family farmers on the date of filing.

Accordingly, the Court grants the IRS's motion for summary judgment and denies Debtors' motion for summary judgment on the questions of whether Debtors are eligible for

---

[53] 11 U.S.C. § 101(18)(A).

[54] Doc. 142, Exh. K.

[55] *In re Grey*, 145 B.R. at 86; *In re Indreland*, 77 B.R. 268 (Bankr. D. Mont. 1987) (holding that debtor who qualified as family farmer on the date of filing did not forfeit his eligibility for Chapter 12 when he proposed to scale down his farming operations post-petition).

17

Chapter 12 relief to the extent that Debtors attempt to rely upon income of Remnant not reported on Debtors' tax returns for purposes of satisfying the definition of family farmer.

**CONCLUSION.**

For the foregoing reasons, the motions for summary judgment on the question of whether Debtors satisfy the income test portion of the definition of family farmer under § 101(18) based upon the income reported in their tax returns are denied. Trial will be necessary to resolve disputed issues of fact as to whether more than 50% of the gross income reported on Debtors' 2005 or 2004 and 2003 federal income tax returns is attributable to their farming operations. However, the Court grants summary judgment to the IRS to the extent that Debtors to satisfy the income test rely upon the income of Remnant, or any other separate entity, which was not reported on Debtors' 2005 or 2004 and 2003 tax returns.

**IT IS SO ORDERED**.

###