**SO ORDERED.**

**SIGNED this 21 day of May, 2008.**



_____
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

OPINION DESIGNATED FOR ONLINE USE BUT NOT FOR PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| DONALD W. DAWES and<br>PHYLLIS C. DAWES, | CASE NO. 06-11237<br>CHAPTER 12 |
| DEBTORS. | |

MEMORANDUM OPINION AND ORDER
DENYING UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON
MOTION TO DISMISS FOR ALLEGED BAD FAITH FILING

The United States filed a motion to dismiss pursuant to 11 U.S.C. 1208(c) alleging the petition was filed in bad faith or, in the alternative, that Debtors are not eligible to file a Chapter 12 case because they do not satisfy the income requirements for a family farmer.[1] The United

---

[1] Doc. 116.

States' Motion for Partial Summary Judgment Regarding Debtors' Bad Faith Bankruptcy Filing[2] is under advisement based upon the briefs of the parties. The Chapter 12 Debtors, Donald W. Dawes and Phyllis C. Dawes (hereinafter collectively "Debtors"), appear by their counsel, Mark J. Lazzo. Creditor, the United States of America, through the Internal Revenue Service (hereafter "IRS"), appears by Stephanie M. Page. There are no other appearances. The Court has jurisdiction.[3]

**BACKGROUND FACTS.**

The Dawes are lifelong farmers in the Goodland, Kansas area. On July 14, 2006, Debtors filed this case pro se under Chapter 7 of Title 11. The Chapter 7 case was dismissed by order filed on August 2, 2006, for failure to file form B22 and schedules. On August 4, 2006, counsel entered his appearance for Debtors. A motion to reopen case was granted, and by order entered August 17, 2006, the case was converted to Chapter 12. The IRS, which holds a judgment for unpaid taxes against the Debtors for $1,541,604.08, plus interest from May 3, 2004,[4] is the principal creditor.

---

[2] Doc. 235. The Court has previously denied the United States' motion for partial summary judgment on the family farmer issue. Doc. 276.

[3] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A motion for construction of a portion of the Code relevant to a motion to dismiss is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

[4] *See United States v. Dawes*, 344 F. Supp. 2d 715 (D. Kan. 2004) aff'd 161 Fed. Appx. 742 (10th Cir. 2005).

On June 29, 2007, the IRS filed its Motion for Dismissal of the Debtors' Chapter 12 case, contending in part that Debtors filed in bad faith.[5] On January 25, 2008, the IRS moved for summary judgment on the bad faith filing issue.[6] The Debtors opposed the motion,[7] and the IRS filed a reply brief.[8] Having considered the parties' briefs, the Court is now ready to rule. For the reasons stated below, the Court denies the IRS' motion.

**UNCONTROVERTED FACTS.**

The uncontroverted facts are evidenced by court documents. Highly summarized, they are the following. In 1988 Debtors were convicted of willful failure to file income tax returns for the tax years 1981, 1982, and 1983. Debtors failed to pay income taxes for 1982, 1983, 1984, 1986, 1987, 1988, and 1990. In 2003 the IRS filed a lawsuit against Debtors to reduce Debtors' income tax liabilities for those tax years to judgment, to set aside Debtors' conveyances of nine parcels of real property to the Plainsman Property Trust (hereafter Plainsman), to obtain a determination that the Plainsman was the a nominee of the Debtors, and to foreclose federal tax liens against Plainsman's nine parcels of real property. Debtors did not retain counsel. On September 21, 2004, the IRS's summary judgment motion was granted. A personal judgment was entered by the District Court against Debtors for $1,541,604.08, plus interest allowable from May 3, 2004 for unpaid assessed taxes, Plainsman was found to be the nominee of Debtors, and

---

[5] Doc. 116. The bad faith filing issue was also raised in support of the IRS' motion for relief from stay (Doc. 8) and in objection to confirmation (Doc. 62).

[6] Doc. 235.

[7] Doc. 251.

[8] Doc. 293.

the nine parcels of real estate owned by Plainsman were found to be subject to the IRS's tax lien.[9] The judgment was affirmed on appeal.[10]

The District Court opinion found that during 1985 and 1986 the Debtors began transferring their property into three trusts, Evergreen Investment Company (to which Debtors transferred vehicles and farm equipment), Plainsman Property Trust (to which Debtors fraudulently transferred nine parcels of real property located in Sherman, Thomas, and Wallace Counties and which the District Court found was the nominee of the Debtors), and Remnant Company (which received income from Debtors' farming operation). On July 11, 2005, the District Court entered an order which provided the IRS could take possession of the nine parcels titled in the name of Plainsman and sell them to satisfy Debtors' tax liabilities.

Debtors did not satisfy the judgment, even in part. On or about June 21, 2006, by letter from the IRS, Debtors were advised that the IRS intended to seize the nine parcels of real property which Debtors had transferred to the Plainsman Trust. They filed for bankruptcy relief *pro se* under Chapter 7 on July 14, 2006. As stated above, that case was dismissed, then reopened, and converted to Chapter 12.

The IRS[11] and the treasurers of Thomas, Wallace, and Sherman Counties are the only creditors listed on Debtors' Schedule D.[12] Schedules A and B listed the nine parcels of

---

[9] *United States v. Dawes*, 344 F. Supp. 2d 715 (D. Kan. 2004), aff'd 161 Fed. Appx. 742 (10th Cir. 2005).

[10] *United States v. Dawes*, 161 Fed. Appx. at 742.

[11] The IRS claim is for $1,747,841.53, 94% of which, or $1,645,145,61, the Debtors allege is attributable to principal, interest, and penalties for 1982 and 1983 income taxes, based upon IRS substituted returns which inflated their taxable income.

[12] Doc. 36.

4

Plainsman real estate worth $867,000 and $5,400 worth of household goods and jewelry.[13]
Vehicles and equipment titled in the name of Evergreen and farm income attributed to Remnant were omitted from the schedules.  Subsequent to the filing, in an agreement with the Chapter 12 Trustee settling post-petition litigation, Debtors have stipulated that the assets of Evergreen and Remnant are property of the estate,[14] and amended schedules have been filed.

 Debtor Donald Dawes has an interest in Earl Dawes Trusts I and II.  These trusts, which own two sections of farm land in Thomas County, are part of Debtors' farming operation.  Debtors' initial schedules did not include the income for the Earl Dawes Trusts or the value of the trust assets.  Debtors' schedules have been amended to reflect an interest in the trusts,[15] but the extent of the estate's interest in Earl Dawes Trusts I and II is the subject of litigation pending in this Court between Debtors and the IRS.

On October 2, 2006, after the filing of the bankruptcy and the filing of the IRS's motion for relief from stay as to the nine parcels of real property titled in the name of Plainsman, an alleged mineral deed purporting to transfer Plainsman's mineral rights to Remnant was filed in Sherman, Thomas, and Wallace Counties.  There are controverted facts as to the extent of Debtors' knowledge and participation in this event.  Upon learning of this transfer, Debtors' counsel filed a motion to set aside the deeds to revest the estate with the mineral interests.

The Court has granted the IRS' motion for relief from stay in part, and eight of the parcels of real property titled in the name of Plainsman have been sold.  Debtors have filed a

---

[13] *Id..*

[14] Doc. 151 attachment.

[15] Doc. 169.

proposed Chapter 12 plan,[16] and a first amended plan.[17] An evaluation of whether the amended plan or any plan can be confirmed must await resolution of several issues pending between the IRS and the Debtors, including whether the Debtors are family farmers entitled to relief under Chapter 12, the amount of the IRS' claim, the extent of the estate's interest in the Earl Dawes Trusts I and II, and the results of the IRS' appeal of this Court's ruling that the treatment of capital gains taxes arising from the postpetition sale of the eight parcels of real estate are covered by 11 U.S.C. 1222(a)(2)(A).

**DISMISSAL FOR LACK OF GOOD FAITH WHEN FILING THE PETITION.**

Section 1208(c) provides that "[o]n request of a party in interest, . . . the court may dismiss a case under this chapter for cause, including," ten enumerated grounds. Although filing in bad faith is not in the list, "[b]ankruptcy courts nevertheless routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words 'for cause.'"[18] Dismissal is always within the court's discretion.[19] "Although the court possesses the authority to dismiss a case for lack of good faith, a lack of good faith does not necessarily *mandate* dismissal in every instance."[20] "Whether a bankruptcy case has been commenced in bad faith is a factual issue."[21]

---

[16] Doc. 50.

[17] Doc. 302.

[18] *Marrama v. Citizens Bank of Massachusetts*, __ U.S. __, __, 127 S. Ct. 1105, 1111 (2007) (Chapter 7 case); *see In re Burger,* 254 B.R. 692, 696 (Bankr. S.D. Ohio 2000) (Chapter 12)*; Gier v. Farmers State Bank of Lucas, Kansas (In re Gier),* 986 F.2d 1326, 1329, (10th Cir. 1993) (Chapter 13)*; In re Pacific Rim Investments, LLP*, 243 B.R. 768, 771-72 (D. Colo. 2000) (Chapter 11).

[19] 7 *Collier on Bankruptcy* ¶ 1112.07[4] (Alan N. Resnick & Henry J.Sommer eds.-in-chief, 15th ed. rev. 2007), citing *In re Rognstad*, 121 B.R. 45, 50 (Bankr. D. Haw. 1990).

[20] *Id*.

[21] *In re Pacific Rim Investments, LLP*, 243 B.R. at 772.

6

Standards for dismissal for cause under the different chapters of the Code are similar, and for Chapter 12 cases bankruptcy courts have looked to case law under both Chapter 11[22] and Chapter 13.[23] When making the determination, the court must examine the totality of the circumstances to determine whether there has been an abuse of the provisions, purpose, or spirit of the applicable chapter.[24] "[T]he good faith standard focuses directly on the subjective intentions of the debtor and proper use of the bankruptcy system as a general system of equity, . . .."[25] Intentions must usually be determined by circumstantial evidence which is examined to determine if debtor filed the petition "to abuse the reorganization process, to cause hardship or delay to creditors by invoking the automatic stay without intent or ability to reorganize her financial activities."[26] Lack of good faith is found only where the debtor's conduct is atypical; dismissal is limited to extraordinary cases.[27]

**THE IRS' ARGUMENTS.**

When urging dismissal for bad faith, the IRS relies primarily upon the factors identified by the Tenth Circuit in *Gier*.[28] They are:

> [T]he nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the

---

[22] *In re Turner*, 71 B.R. 120, 123 (Bankr. D. Mont. 1987).

[23] *In re Burger*, 254 B.R. at 696.

[24] *In re Gier*, 986 F.2d at 1329.

[25] 7 *Collier on Bankruptcy* ¶ 1112.07[1].

[26] *In re Massie*, 231 B.R. 249, 253 (Bankr. E.D. Va. 1999).

[27] *Marrama v. Citizens Bank of Massachusetts*, __ U.S. at __ n. 11, 127 S. Ct. at 1111 n. 11.

[28] *In re Gier*, 986 F.2d at 1326.

7

> petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.[29]

The IRS argues that uncontroverted facts establish: That the IRS claim would be nondischargeable under § 1228(a), which incorporates § 523(a)(1)(C); that the petition was filed to stop foreclosure and not to reorganize; that it has been prejudiced by the delay occasioned by bankruptcy and the costs of related litigation; that Debtors have not made attempts to pay their taxes for over 20 years; and that Debtors have not been forthcoming with the Court and creditors in their bankruptcy filings, including their schedules. The Court finds the IRS's position insufficient to dismiss for bad faith for several reasons.

First, the most important of the *Gier* factors are not satisfied by the uncontroverted facts. Debtors' motivation in seeking bankruptcy relief is the primary focus of the bad faith inquiry. In this case, there is no direct evidence, other than the timing of the petition, supporting the contention that the petition was filed for an improper purpose. However, there is nothing unusual or inherently bad about timing the filing of a bankruptcy petition to stay a pending seizure of property. The IRS offers no testimony in support of improper motivation. Rather it argues that the filing is just one more event in the long string of actions to avoid payment of taxes. The Court declines to draw this conclusion as to motivation. Debtors' actions since filing evidence intent to reorganize. Debtors' acknowledged that the IRS should be granted relief from stay to sell the Plainsman real property. Debtors have agreed that the assets of Remnant and Evergreen are property of the estate. Debtors have filed amended schedules and an amended

---

[29] *Id.*, 986 F.2d at 1329, *quoting In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992).

8

plan. Debtors' have initiated litigation to determine the estate's interest in the Earl Dawes Trusts I and II. There are disputed issues of fact as to Debtors' participation in the filing of the post-petition mineral deed. In addition, Debtors dispute the IRS's assertion of nondischargeability. Since this issue has not been fully briefed, the Court declines to make any finding in this regard.

In addition to relying upon the criteria of *Gier*, the IRS urges this Court to follow two additional Chapter 13 cases, *Fooks*[30] and *Brooks*,[31] that held filing a bankruptcy case for the sole purpose of thwarting the IRS's collection of Nondischargeable taxes is an impermissible misuse of the jurisdiction and process of the bankruptcy courts. First, as stated above, dischargeability is an outstanding issue. Further, these cases involve additional facts which make them distinguishable. In *Fooks*, the debtors had previously been granted a discharge under Chapter 7, the proposed Chapter 13 plan was not confirmable, and debtors had not exhausted administrative remedies regarding the tax claim. In *Brooks*, it had been determined in a prior case that Debtor was not eligible for Chapter 13 relief because the amount of his unsecured debt to the IRS exceeded the statutory limit, and the order dismissing a prior Chapter 13 case had res judicata effect. This is Debtors first bankruptcy filing.

Second, the Court finds that the factors relied upon by the IRS as evidencing bad faith in a Chapter 13 case are not well suited to evaluation of this Chapter 12 filing. The goal of a Chapter 12 case is the confirmation of a debt adjustment plan.[32] There are many similarities

---

[30] *In re Fooks*, 139 B.R. 623 (Bankr D. Md. 1992).

[31] *In re Brooks*, 216 B.R. 838 (Bankr. N.D. Okla. 1998).

[32] 8 *Collier on Bankruptcy* ¶ 1200.01[3][c].

9

between farm cases under Chapter 11 and Chapter 12.[33] For Chapter 11 cases, the situations in which absence of good faith has been found to:

> [I]nclude those involving (1) use of bankruptcy as a vehicle to defraud others, (2) the persistent failure to comply with applicable court orders, rules or procedures, (3) use of the bankruptcy process to escape familial obligations, (4) the secretion of property and other efforts to avoid the disclosure of assets, (5) use of the bankruptcy system simply to avoid the consequences of prior misconduct, (6) the filing of a case to avoid an obligation under circumstances in which the debtor is not in need of reorganization, (7) the absence of legitimate debt, (8) the absence of any likelihood of rehabilitation, (9) use of bankruptcy as a vehicle to resolve disputes solely between equity participants, (10) use of the bankruptcy process merely to frustrate the rights of creditors (particularly with respect to single assets cases) or to coerce unfair treatment, (11) successive filings without any change in financial condition, and (12) the so-called new debtor syndrome, in which a debtor is created, or property transferred, solely for the purpose of commencing a bankruptcy case. In situations like these, although the debtor or some other party might in many instances otherwise proceed to formulate a plan of reorganization, continuing the process is thought to constitute a perversion of the reorganization laws and the court may terminate the proceeding to prevent the abuse.[34]

In this case, in contrast to the foregoing examples, the continuation of the case would not constitute a perversion of the reorganization process. This Court is a forum where the amount of and the collateral securing the IRS's claim can be determined. It provides a process where the Debtors may be able to propose a confirmable plan that will allow them to continue farming while paying the IRS debt in accord with the Code.

Third, and most important, even if the uncontroverted facts presented by the IRS were sufficient for a finding that the case was filed in bad faith, the Court in the exercise of its

---

[33] 8 *Collier on Bankruptcy* ¶ 1200.01[4].

[34] 7 *Collier on Bankruptcy* ¶ 1112.07[2].

10

discretion would decline to dismiss it for that reason. As stated above, when bad faith is present the dismissal is nevertheless committed to the sound discretion of the Court. In this case, permitting the Chapter 12 case to proceed will fulfill the valuable purpose of allowing the determination of the amount of the IRS claim and the identification of the property securing that claim. Because of outstanding issues, an evaluation of whether confirmation is impossible or even unlikely would be premature. The purpose of Chapter 12 may be fulfilled in this case.

For the foregoing reasons, the Court denies the IRS' motion for summary judgment on the question of whether this case should be dismissed because it was not filed in good faith. Material issue of disputed fact preclude such a finding. However, even if the Court were to conclude that the petition was not filed in good faith, the Court in its discretion would not dismiss the case at this time, since it appears that continuation with the case may promote the purposes of Chapter 12.

**IT SO ORDERED.**

###