**SO ORDERED.**

**SIGNED this 29 day of October, 2008.**



Dale L. Somers
_____
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Designated for on-line use; not designated for print publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In Re:** | |
| **DONALD W. DAWES and** | **CASE NO. 06-11237** |
| **PHYLLIS C. DAWES,** | **CHAPTER 12** |
| **DEBTORS.** | |
| **DONALD W. DAWES and** | |
| **PHYLLIS C. DAWES,** | |
| **PLAINTIFFS,** | |
| **v.** | **ADV. NO. 08-5093** |
| **INTERNAL REVENUE SERVICE,** | |
| **EUGENE CRISS, as Trustee of Earl Dawes** | |
| **Trust I and Earl Dawes Trust II, and** | |
| **EDWARD J. NAZAR, Chapter 12 Trustee,** | |
| **DEFENDANTS.** | |

**MEMORANDUM OPINION AND ORDER DENYING DEBTORS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON EARL DAWES TRUSTS ISSUES**

The matter before the Court is the Debtors' motion for partial summary judgment on the claim of the IRS that the Earl Dawes Trust No. 1 ("Trust 1") and Earl Dawes Trust No. 2 ("Trust 2") are sham trusts and that the entire trust corpus of Trust 1 and Trust 2 (collectively the "Trust Corpus") is available for satisfaction of the IRS's claim. The Court has considered the Debtors' motion and supporting brief, the IRS's response, and the Debtors' reply. For the reasons stated below, the Court finds there are material facts in controversy[1] and denies the Debtors' motion.

**BACKGROUND.**

The IRS is the principal creditor in this Chapter 12 case, which was filed on July 14, 2006. The IRS filed a proof of claim for $1,747,841.53,[2] and Debtors' objections to the amount of that claim have been denied.[3] Prepetition the IRS filed notices to perfect its liens in Debtors' real and personal property. The IRS was granted relief from stay to proceed with a court ordered foreclosure sale of certain of Debtors' real property that was subject to its tax lien.[4] Sale proceeds in the amount of $947,000 were deposited into the registry of the District Court and disbursement made to the IRS.[5] On February 12, 2005, the IRS filed an amended proof of claim for $856,492.40.

---

[1] Since the standards for summary judgment are well established and known to counsel, they will not be repeated here.

[2] After the sale of real property which was subject to the IRS's tax lien and application of the proceeds to a portion of the claim, the IRS on February 12, 2008 filed an amended proof of claim for $856,492.40.

[3] Case no. 06-11237, Doc. 339.

[4] *Id.*, Doc. 47.

[5] *United States v. Donald W. Dawes, et al.*, No. 03-1132-JTM (D. Kan. 2003).

2

The IRS claims in this adversary proceeding, as well as in the main case,[6] that its lien on Donald Dawes' interests in two trusts extends to the entire corpus of the trusts. Debtors assert that the IRS' lien is limited to his beneficial interest under the trust instruments, which have little value, and that the Trusts Corpus is not property the bankruptcy estate.

**FINDINGS OF FACT.**

### A. UNCONTROVERTED FACTS.

The facts concerning the creation and terms of the two trusts are uncontroverted. Trust 1 was established by Earl Dawes, Debtor Donald Dawes' father, in 1984. It was replaced in its entirety by the "First Supplemental Trust Agreement dated June 1, 1989," which is the operative document controlling the assets of Trust 1. Trust 1 specifies the initial trustees are Earl Dawes and Maxine Dawes, Debtor Donald Dawes' mother. The corpus of Trust 1 was initially funded solely with property transferred from Earl Dawes. During his life, Earl Dawes had discretion to disburse property from Trust 1.

Trust 1 became irrevocable upon Earl Dawes' death in 1995, at which time the trust continued for the benefit of Maxine Dawes. Gene Criss, Earl Dawes' accountant, was designated as the successor trustee to Earl Dawes. Upon Maxine Dawes' death in 1998, the trust assets were to be divided into four individual trusts for the couple's four children, the Judith A. Dunlap Share, the Sonja J. Goetsch Share, the Janice K. Galloway Share, and the Donald Dawes Share. There was a family meeting to discuss the trusts. The daughters did not want the property in trust and decided that their trusts should be terminated and the property be distributed to them. Donald Dawes' share was not terminated because he had IRS problems and did not

---

[6] Case no. 06-11237, Docs. 135, 172, and 233 and the objections thereto.

3

want the property made available to the IRS. The only share which has not been terminated at the request of the beneficiary is the Donald Dawes Share. The assets of Trust 1 are valued at $532,232 and are comprised of farm real estate, farming equipment, growing crops, and other farm related property.[7]

The terms of sub-paragraph (4)(c) of Trust 1, regarding the administration and distribution of the assets of the individual shares, provides in part:

> (1) The independent Trustees shall pay or distribute to or apply for the benefit of any one or more of a group consisting of the beneficiary for whom such separate share is designated, the spouse of such beneficiary, the issue of every degree of such beneficiary, and the spouse or spouses of the issue of every degree of such beneficiary, such amount or amounts of the net income and principal of such separate share as the independent trustees, in their absolute discretion, may determine at any time and from time to time, and the independent Trustees shall have the absolute discretion, at any time and from time to time, to make unequal payments or distributions to or among any one or more of said group and to exclude any one or more of them from such payment or distribution. . . . If, pursuant to the provisions of this sub-part (1), the independent Trustees shall have paid and distributed all of the property then constituting any such separate share to or for the benefit of any one or more of said group at any time prior to the distribution of such separate share under the provisions of sub-part (2) of this sub-paragraph (c) or the termination of such separate share under the provisions of sub-part (3) of the sub-paragraph (c), then such separate share shall terminate at the time of such final payment or distribution, but otherwise such separate share shall be distributed as set forth in sub-part (2) or sub-part (3) of the sub-paragraph (c), as the case may be, in the time and manner set forth therein.
> (2) In the event any such separate share is not [so] terminated . . . and if the beneficiary for whom such separate share is designated is living upon the death of the survivor of the Donor and Velma Maxine Dawes, then upon the death of the beneficiary for whom such share is designated the Trustees shall distribute the

---

[7] Additional property may have be transferred to Trust 1 subsequent to 1998.

4

accumulated income and principal of such separate share to or for the benefit of any one or more appointees in such proportions and manner as the beneficiary for whom such separate share is designated shall appoint; provided, however, that the beneficiary for whom such separate share is designated shall not have the power to appoint any portion of such separate share, directly or indirectly, to or for the benefit of himself or herself, his or her creditors, his or her estate or the creditors of his or her estate. . . .

In the event Donald Dawes fails or is unable to exercise the power of appointment, Donald Dawes' spouse and lineal descendants are entitled to receive income and principal, in the discretion of the Trustee. Donald Dawes has four living children, each of whom is married, and seven grandchildren. Gene Criss, designated as the independent trustee, and Donald Dawes' sister, Sonja Brigman, have served as the trustees of Donald Dawes' share. Trust 1 shall terminate upon the earlier of the exhaustion of the Trust assets (which can be accomplished by distributions) or the day prior to the expiration of applicable period of perpetuity.

Trust 2 was created by Earl Dawes on July 1, 1989, based upon the advice of Gene Criss. At that time, Earl Dawes gave direct gifts of real property to his children, other than Donald, whose share was placed in Trust 2. The intention of Earl Dawes in setting up Trust 2 was to reduce the elder Dawes' estate for federal income tax purposes and create an entity to receive a section of farm land which Earl Dawes wanted to bequeath to Donald Dawes. Earl Dawes was aware that Donald and Phyllis Dawes were having problems over alleged back taxes owed to the IRS; Earl Dawes was adamant that he did not want the IRS to get the property. Gene Criss was named the independent trustee, and two of Donald Dawes' sisters were named the beneficiary trustees. Trust 2 is the owner of 640 acres of farm land in Thomas County, growing crops, and a bank account. The total value is approximately $504,309.

5

Trust 2 provides in part as follows regarding the administration of the trust and distributions from the trust:

> (a) The Trustees shall pay to or apply for the benefit of Donald W. Dawes, son of the Donors, annually or at more frequent intervals, all of the net income derived from this trust, so long as he shall live. . . .
> (b) In addition, the independent Trustee shall pay or distribute to or apply for the benefit of Donald W. Dawes such amount or amounts of the principal of this trust, as the independent Trustees, in their absolute discretion, may determine at any time and from time to time. . . .
> (c) In the event this trust is not terminated under the provisions of sub-paragraph (a) and sub-paragraph (b) of this Paragraph 1, then upon the death of Donald W. Dawes the Trustees shall distribute the accumulated income and principal of this trust to or for the benefit of any one or more appointees, in such respective proportions as he shall appoint; provided, however, that he shall not have the power to appoint any portion of this trust, directly or indirectly, to or for the benefit of himself, his creditors, his estate or the creditors of his estate. . . .

In the event Donald Dawes fails or is unable to exercise the power of appointment, Donald Dawes' spouse and lineal descendants are entitled to receive income and principal, in the discretion of the Trustee.

Debtor farms the property titled in the name of Trust 1 and Trust 2 through Remnant, a trust created by Debtors. Debtor also uses the equipment held by Trust 1. All of the crop proceeds, cattle proceeds, and other farm income from the Trust 1 and Trust 2 property are deposited to Remnant's account, as is farm income from other property farmed by Debtors through Remnant. Remnant pays the expenses for the Trusts' farming and cattle operations and labor costs for Debtor's farm work. Remnant pays Debtors' personal expenses. The family homestead where Donald and Phyllis Dawes reside is located on the Trust 2 section of land.

6

Gene Criss writes checks from Trust 2's account when directed by Debtors for repair and upkeep of the property.

As reflected in the record of this case and prior litigation with the IRS,[8] Donald and Phyllis Dawes have a history of using nominee/alter ego trusts to hold their assets.

Gene Criss has kept the financial records of Trust 1 and Trust 2. He has provided the same to accountants for the preparation of tax returns, which have been appropriately filed.

## B. CONTROVERTED FACTS.

As to the property in the Trusts, Donald Dawes contends the Trusts contain no property transferred from the Debtors, whereas the IRS contends that subsequent to the initial funding with property of Earl and Maxine Dawes, the corpus has been augmented by other transfers, including proceeds and profits from Debtors' farming operations.

It is uncontroverted that a decision was made at or following a family meeting after Maxine Dawes' death to terminate the shares of Trust 1 created for Maxine's daughters but not the share created for Donald Dawes. The Court cannot determine from the facts presented the extent of Gene Criss' and Donald Dawes' involvement in those decisions.

The facts concerning the operation of Trust 1 and Trust 2 are controverted. It is uncontroverted that Gene Criss is the independent trustee, as that term is used in the trust instruments, and the trustees of Trust I also include one of Donald Dawes' sisters. The IRS contends that Donald Dawes is also a trustee of Trust 1. As to Trust 2, Gene Criss and two of Debtor's sisters are the trustees. However, the IRS asserts that neither sister is independent or is an active trustee.

---

[8] *United States v. Dawes*, 344 F. Supp.2d 715 (D. Kan. 2004).

7

There is a controversy over the extent to which Gene Criss, the active trustee, exercises independent discretion and the extent to which he defers to Donald Dawes. The IRS controverts Debtors' statement supported, by the affidavit of Gene Criss, that the independent trustee has determined all discretionary payments from Trust 1. The extent of Gene Criss' involvement in the family meeting following the death of Maxine Dawes and the decision to continue the Donald Dawes Share of Trust 1 is not known. Further, the IRS provides evidence in support of the contention that Donald Dawes determines whether distributions should be made to him, held by the trust, paid to his children, or paid to Remnant Trust, a trust created by Donald Dawes, through which he conducts farming operations. The IRS contends that Remnant was used by Debtor as a nominee or alter ego to avoid paying federal taxes. The IRS also controverts Gene Criss's affidavit that no distributions of principal have been made from Trust 1 or Trust 2, stating that principal payments have been made to Debtors and to Remnant.

The IRS provides evidence that the Debtors have access, control, and possession of the property and income from Trust 1 and Trust 2, based primarily upon the fact that Debtor, through Remnant, farms the real property in the trusts without leases, an employment contract, or any other formal arrangement. The extent of record keeping and the involvement of Gene Criss in farming decisions are controverted. The IRS also asserts that Donald Dawes has signature authority on Trust 1's bank account and purchases property for Trust 1. The IRS controverts the Debtors' statement that the assets of the two trusts have remained separate.

**ANALYSIS.**

    **A. THE PARTIES' POSITIONS.**

Case 06-11237    Doc# 372    Filed 10/29/08    Page 8 of 16

The pretrial order states the IRS's contentions as follows: "The IRS contends that the corpus of Trust No.1 and Trust No. 2 is property of the bankruptcy estate and subject to the IRS tax lien."[9] The IRS's first theory of recovery in support of this contention as stated in the pretrial order is as follows:

> The trust form was used to hold Donald Dawes' inheritance for the improper purpose of keeping the property outside the reach of the federal tax liens. Debtors have access, control and possession of the trust property and income from the trust property. They have commingled the trust property with their own property. The trusts are shams/alter egos/nominees and should be disregarded.[10]

The Debtors, when moving for summary judgment, contend that given the uncontroverted facts, the IRS cannot prevail on these theories of recovery in support of the contention that the corpus of Trust 1 and Trust 2 is property of the estate subject to the tax lien.

### B. APPLICABLE LEGAL PRINCIPLES.

The starting point in determining this controversy is the Code, particularly § 506 and § 541. Section 506 provides a creditor has a secured claim to the extent it has an allowed claim "secured by a lien on property in which the estate has an interest." Property in which the estate has an interest is defined by § 541. It provides in § 541(a)(1) that the bankruptcy estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." For purposes of § 541, determination of what property the debtor has an interest in is determined by nonbankruptcy law, usually state law.[11] However, § 541(b)(1) excludes "any power that the

---

[9] Doc. 41.

[10] *Id.*

[11] *Butner v. United States*, 440 U.S. 48 (1979).

9

debtor may exercise solely for the benefit of an entity other than the debtor," and § 541(c)(2)

provides that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is

enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

Ignoring for the moment the IRS's contentions that Trust 1 and Trust 2 are shams, the

Court knows of no theory under which the Trust Corpus, which was transferred to the trusts by

Debtors' father, not by Debtors, would be included in the estate.  The interest of Donald Dawes

in Trust 1 is as a beneficiary of a trust where all distributions of income and principle are subject

to the absolute discretion of the trustee.  As to creditors, the discretionary aspect of his interest

makes his beneficial interest similar to that of a beneficiary's interest under a spendthrift trust.

The undistributed corpus is therefore excluded from the estate under § 541(c)(2).[12]  Donald

Dawes has no present beneficial interest in the corpus of Trust 1.  Further, Donald Dawes holds a

power of appointment, but it may not be exercised for his benefit or the benefit of his creditors.

It is therefore excluded from the bankruptcy estate by § 541(b)(1).[13]

As to Trust 2, Donald Dawes has a beneficial interest in future income, which must be

distributed at least annually.  This interest is included in the estate as defined by § 541(a)(1).

However, Debtor's right to principle distributions, which can be made at the discretion of the

trustee, and his power of appointment, which can not be exercised for Debtor's benefit, are the

nearly identical interests his similar interests under Trust 1, and likewise excluded from the

---

[12] *Farmers Cooperative Co. of Rush Center, Kansas v. Timken State Bank (In re Pechanec)*, 59
B.R. 899 (Bankr. D. Kan. 1986).

[13] *See* 5 *Collier on Bankruptcy* ¶ 541.19 (Alan N. Resnick & Henry J. Sommer eds.-in-chief,
15th ed. rev. 2008).

10

estate.  Thus, assuming, as Debtors argue, that the trusts are valid and enforceable according to

their terms, the estate does not include the Trust Corpus.

### C. THERE ARE MATERIAL FACTS IN CONTROVERSY REGARDING THE SHAM TRUST CONTENTION.

The IRS therefore argues that the trusts are shams and their separate existence should be

disregarded so the Trust Corpus is property of the estate.  As noted above, the starting point in

applying the definition of property of the estate is state law.  Therefore, if the trusts are shams or

alter egos of the Debtor under *Kansas law*, the Trust Corpus would be included in the estate and

the IRS's claim would be secured by the corpus, assuming its lien would attach to that interest.

Given the uncontroverted fact that the trusts were established by Debtor's father rather than by

Debtor, the IRS's position is novel.  Neither the parties nor the Court's own research has

located any Kansas cases in which a trust has been found to be a sham under circumstances

similar to this case.  However, without so ruling, the Court finds that it is possible that the

Kansas courts would recognize such a cause of action.[14]  Under Kansas law it is well established

that the separate existence of a corporation may be disregarded under the alter ego doctrine.[15]

Also, the separate existence of a revocable grantor trust is disregarded as to creditors of the

grantor.[16] Transfers fraudulent as to the transferor's creditors may be recovered.[17]

---

[14] Following trial, the Court will welcome briefs on this issue.

[15] *E.g., Dean Operations, Inc. v. One Seventy Associates*, 257 Kan. 676, 896 P.2d 1012 (1995).

[16] K.S.A. 58a-505(a)(1); *see Redmond v. Kester*, 284 Kan. 209, 159 P.3d 1004 (2007) (holding that debtor may claim homestead exemption in residence which was transferred prepetition by debtor to a revocable trust).

[17] K.S.A. 33-204.

11

Since the Court has not located any Kansas cases where a trust has been disregarded when the assets were transferred to trust by other than the beneficiary, there is no established list of relevant considerations.  However, this Court is convinced that all of the facts and circumstances relating to the creation and administration of the trust should be considered.  The IRS when opposing summary judgment argues that under federal tax law Trust 1 and Trust 2 are nominees or alter egos of Donald Dawes so that the Debtor is the true owner of the trusts' assets and the federal tax liens attached.[18]  Under this doctrine, if a taxpayer has a property interest or rights in the property held by a third person (the nominee) which the IRS seeks to reach, then the court considers many facts, including (1) the taxpayer's control over the nominee and its assets; (2) the use of the funds to pay the taxpayer's personal expenses; (3) the relationship between the taxpayer and the nominee; (4) the lack of internal controls and the lack of nominee oversight of the taxpayer's actions; and (5) the lack of consideration for the transfer of the property.  If Kansas law would disregard the separate existence of a trust (other than a revocable grantor trust) for the benefit of creditors, this court believes that it would it do so upon similar considerations.  Other relevant circumstances would include some of those which the Kansas courts have identified as material when determining to pierce the corporate veil or to set aside allegedly fraudulent transfers.

The Court finds the IRS has presented sufficient evidence, when considered in the light most favorable to its position, to avoid summary judgment in favor of the Debtors on the question of whether Trust 1 and Trust 2 are shams under Kansas law.  For example, there are questions of material fact concerning the decision not to terminate the Donald Dawes Share of

---

[18] The IRS cites *Holman v. United States*, 505 F.3d 1060 (10th Cir. 2007) and other cases.

12

Trust 1 following the death of Maxine Dawes, the degree to which Gene Criss exercises

independent discretion when administering the trusts, and the extent of Donald Dawes' control

of the trusts.

The fact that the IRS's theory of recovery has not been explicitly recognized

by the Kansas courts, provides further reason to deny Debtor's motion for summary judgment.

This Court agrees with the observation of a noted commentator on civil procedure that summary

judgment should be used sparingly in complex lawsuits that raise novel issues of law.[19]  As one

court has observed:

> Summary judgment, with ever-lurking issues of fact, is always a
> treacherous shortcut . . . Such relief is always discretionary, and in
> cases posing complex issues of fact and unsettled questions of law,
> sound judicial administration dictates that the court withhold
> judgment until the whole factual structure stands upon a solid
> foundation of a plenary trial where the proof can be fully
> developed, questions answered, issues clearly focused and facts
> definitively found.[20]

**D.  THE IRS' ESTABLISHMENT THAT IT HAS A LIEN ON THE TRUST
CORPUS WOULD NOT ENTITLE IT TO PAYMENT OF ITS CLAIM FROM
THE TRUST CORPUS IN THE BANKRUPTCY CASE.**

Although the foregoing determines the issue presented by Debtors' motion, the Court

pauses to observe that the IRS's legal arguments in opposition to the motion for summary

judgment focus primarily upon federal tax lien law,[21] rather than the Code, which incorporates

---

[19] 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2725, n.13 1006 (2d ed. 1998).

[20] *Petition of Bloomfield Steamship Co.*, 298 F. Supp. 1239, 1242 (D.S.D.N.Y. 1969), aff'd 422 F.2d 728 (2nd Cir. 1970).

[21] The steps in the IRS's argument are as follows.  Under IRC § 6321, the federal tax lien attaches to all property and rights to property of a delinquent taxpayer, and the question of

13

Kansas law when defining property rights. One could interpret the IRS as asserting that, if it prevails on the theory that it has a lien in the Trust Corpus under federal law, the Trust Corpus would be available for satisfaction of its bankruptcy claim. This is not the law. As stated above, under § 506(a) a creditor's allowed claim is secured only to the extent it has a lien in property in which the estate has an interest. The fact that under federal law the IRS may have a lien on the Trust Corpus does not result in the inclusion of the Trust Corpus in the estate. Section 541 does not include in the estate all property securing an allowed claim; it includes all legal and equitable interests of the debtor in property, subject to certain exclusions, such as beneficial interests in trusts protected by spendthrift provisions and powers of appointment not exercisable for the benefit of the debtor. If the IRS is urging that the presence of a lien in the Trust Corpus is sufficient to entitle it to payment of its bankruptcy claim, it has put the cart before the horse - it is asserting its bankruptcy claim is secured by a lien in the Trust Corpus before establishing that the estate has an interest in the Trust Corpus.

Although there is disagreement among the courts on the question of whether an estate includes property encumbered by a tax lien which property would otherwise be excluded from the estate, the Court finds the better view is that such property is not included in the estate. This is the position stated in a 2006 Chief Counsel Advisory of the IRS, that concludes "the attachment of the tax lien to excluded property belonging to the debtor does not entitle the IRS to

---

whether a state law right constitutes property or rights to property under IRC § 6321 is a matter of federal law. Spendthrift clauses are ineffective against a federal tax lien, so the discretionary clauses designed to shield Donald Dawes' interests from the IRS do not preclude the attachment of the federal tax lien. Next IRS cites *United States v. Krause*, 386 B.R. 785, 831 n.153 (Bankr. D. Kan. 2008) when arguing that the purpose of Trust 1 and Trust 2, to defeat the federal tax lien, violates public policy. Finally, and perhaps most importantly, the IRS argues that the trusts are nominees of Donald Dawes.

14

file a secured claim in the bankruptcy case."[22]  It relied upon *Snyder*,[23] a decision of the Ninth

Circuit Court of Appeals.  *Snyder* addressed a question similar to that before this Court - whether

in a Chapter 13 case an IRS claim for delinquent taxes was secured by a lien on a debtor's

interest in an ERISA-qualified pension plan, where the IRS had a lien on the debtor's interest in

the plan outside of bankruptcy but the debtor's interest was otherwise excluded from the estate

by § 541(c)(2).  Because of the IRS's unique ability to have a lien in the pension plan, it argued

that not withstanding § 542(c)(2) the debtor's interest should be treated as property of the estate,

"though only for the limited purpose of securing the IRS's claim."[24]  The court held that

spendthrift protection of the plan applicable to all but the IRS was enough to prevent the transfer

of the debtor's interest under the plan to the estate.  It therefore held the property could not be

used to secure the IRS's claim under § 506(a).[25]  Other courts adopt this position.[26]

There are cases to the contrary.  For example, *McIver*[27] held that a debtor's beneficial

interest in a trust is property of the estate to the extent that, under federal tax lien law, the IRS

could reach the interest outside of bankruptcy.  This Court finds this result unsatisfactory.

Including such property creates two estates - one for all creditors other than the IRS; and a

second augmented estate for purposes of the IRS claim.  There is nothing in the Code consistent

---

[22] I.R.S. Chief Couns. Advis. 200634012, 2006 WL 2460482 (2006).

[23]  *United States Internal Revenue Service v. Snyder*, 343 F.3d 1171 (9th Cir. 2003).

[24] *Id.*, 343 F.3d at 1174.

[25] *Id.*, 343 F.3d at 1178-1179.

[26] *E.g., In re Keyes*, 255 B.R. 819 (Bankr. E.D. Va. 2000); *In re Wilson*, 206 B.R. 808 (Bankr. W.D.N.C. 1996).

[27]  *Internal Revenue Service v.  McIver*, 255 B.R. 281 (D. Md. 2000).

15

with this result. If a third party has pledged property to secure a liability of a debtor, such property is not included in the estate.[28] Absent a finding that the trusts are shams under state law, this situation is similar - the trusts are third parties and the Trust Corpus is not included in the estate, even assuming the corpus is liable for the Debtors' taxes.

The Court therefore holds that even if the IRS is correct that the Trust Corpus is subject to the IRS lien, such a finding would not result in inclusion of the Trust Corpus in the estate. In order for the IRS's allowed claim to be paid from the Trust Corpus it must establish that the corpus is property of the estate for all purposes. In other words, the IRS must show that the trusts are shams under Kansas law and the Trust Corpus are therefore included in the estate under § 541(a).

## CONCLUSION.

For the foregoing reason the Court denies Debtors' motion for summary judgment. The Court will determine following trial under the facts of this case whether Kansas law would regard Trust 1 and/or Trust 2 as shams. At the present stage of this litigation, there are material facts in controversy that would be material to such a claim, including the circumstances of the decision that the Donald Dawes Share of Trust 1 remain in trust, the degree to which Gene Criss exercises independent discretion when administering the trusts, and the extent of Donald Dawes' control of the trusts.

**IT IS SO ORDERED.**

**###**

---

[28] *E.g., Boldt v. Alpha Beta Co. (In re Price Chopper Supermarkets, Inc.)*, 40 B.R. 816 (Bankr. S.D. Cal. 1994).

16
